## LEWIS H. DAVIS *et al.*
### *v.*
## THE FIDELITY FIRE INSURANCE COMPANY.

*Opinion filed February 17, 1904—Rehearing denied April 12, 1904.*

1. CONTRACTS—*prior negotiations are merged in final written agreement.* After parties reduce to writing their agreement as finally determined upon, all prior negotiations leading up to the execution of the writing are merged therein, and parol evidence is not admissible to explain, modify or enlarge its terms.

2. SAME—*when duration of agency is indefinite.* Where the final letter of appointment of an agent by an insurance company contains no definite provision as to duration of the agency, although drafts of the letter had passed between the company and the agent several times with alterations in other respects, the agency is terminable at will, notwithstanding it is clear that the appointment was sought by the agent for a period of five years and the letter of appointment expresses the hope the business will be permanent.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. JESSE HOLDOM, Judge, presiding.

This is a bill of interpleader filed in the superior court of Cook county by the Illinois Trust and Savings Bank against Lewis H. Davis, John Shepherd and John E. Shepherd, partners under the firm name of Davis & Shepherd, doing business in Chicago, and the Fidelity Fire Insurance Company of Baltimore, offering to bring into court the amount of a deposit in said bank of $12,-016.79 in the name of said insurance company, subject to the check of said insurance company, signed by Davis & Shepherd, managers, which moneys, it is alleged, were claimed both by the insurance company and Davis & Shepherd. Answers and replications were filed, and the case was referred to a master to take the evidence of the respective parties and report his conclusions. On the coming in of the master's report, and after objections and exceptions had been overruled thereto, a decree was

entered dismissing the bank from the suit, re-imbursing it for costs and solicitors' fees and releasing it from all claims of the defendants; also directing the bank to pay to Davis & Shepherd out of the fund $10,610 and their costs, and the balance to the insurance company. The insurance company prosecuted an appeal to the Appellate Court for the First District, where the decree was reversed and the cause was remanded to the superior court, with directions to enter a decree that the Illinois Trust and Savings Bank, after deducting its costs in the Appellate and superior courts and its solicitors' fees in the Appellate Court, pay the balance of the deposit in its hands to the Fidelity Fire Insurance Company, and that Davis & Shepherd pay all other costs in the Appellate and superior courts, and a further appeal has been prosecuted to this court by Davis & Shepherd.

The appellants, Davis & Shepherd, in the spring of 1900 became the western agents of the Fidelity Fire Insurance Company, with offices in Chicago. They acted as such agents from May 1 to December 8, 1900, when the western agency was discontinued and the appointment of Davis & Shepherd was terminated. The deposit held by the Illinois Trust and Savings Bank was the earnings of the western agency during that period, and the claim of Davis & Shepherd was, that they had an equitable lien thereon for damages growing out of the wrongful termination of their agency in December, 1900, when they had been appointed the western agents of said insurance company, until May 1, 1905,—that is, for the period of five years.

The negotiations leading up to the appointment of Davis & Shepherd as western agents of said insurance company were begun in March, 1900, and were carried on by J. J. Courtney, representing the insurance company, who later became its president, and the members of the firm of Davis & Shepherd, and continued until the following June 16, when they were completed, though the

commencement of the agency was to be dated back as of May 1, 1900, about which time it appears that Davis & Shepherd began work for the insurance company. The first negotiations between Courtney and the members of said firm were in Chicago on March 22, 1900, which were followed by a letter from Davis & Shepherd on March 24, to J. J. Courtney, as president of the insurance company, written at Courtney's suggestion, embodying the substance of their conversation upon the 22d of March in the form of a proposition to be submitted to the board of directors of the insurance company, to represent the said company as its western agents, with offices at Chicago. The letter is lengthy and relates to certain matters concerning the western branch of the company's business, and in so far as it is material to the matters in controversy between the parties is as follows:

"CHICAGO, *Mch. 24, 1900.*

"*Mr. J. J. Courtney, Pres't, Brooklyn, N. Y.:*

"DEAR SIR—Referring to our conversation of yesterday. * *

"*Tenth*—It must be the understanding that the contemplated arrangement is a permanent one, extending over a period of years,—not less than five nor more than ten is asked in such a contract,—for which employment the said named gentlemen will give their very best endeavor and their time in the development of said department.

"*Eleventh*—A percentage of five per cent will be expected on the balance betwixt income and outgo in said department, to be paid Messrs. Davis & Shepherd.

"*Thirteenth*—Only upon the condition of establishing a permanent insurance business on a solid basis and under conservative management are these gentlemen willing to engage to open up and develop such department, and a contract will be entered into by them with this understanding only.

"*Fourteenth*—* * *

"At a very conservative estimate, and on $2500 lines, such as you suggest, an income in this territory of $150,000 for the first year may be expected, $200,000 second year, $250,000 third year, and $300,000 within five years. This means that the most conservative methods are to be used in the selecting of business and in the management of the department, and only the best business, through good agencies, selected."

April 15, 1900, Davis & Shepherd sent a telegram to Courtney at the company's office in Baltimore, in which it is stated that Mr. John Shepherd of their firm would be with him, Courtney, Friday, (evidently referring to a later date,) and saying, "He has our authority to close contemplated arrangements." The evidence shows that Mr. John Shepherd did go to Baltimore, where the matter of the agency was discussed with Mr. Courtney, and the testimony shows that, among other things, the duration of the agency was discussed, and Shepherd stated that he "would not enter into any arrangement that did not contemplate some length of time." During the month of May following, letters were written by Courtney to Davis & Shepherd which refer, in a general way, to the agency and their letter of appointment which was to be sent to them, and on May 7 Courtney sent a letter of that date to Davis & Shepherd in Chicago, in which was enclosed a draft of a letter of appointment of Davis & Shepherd as western branch managers of the company. The first of these letters states, in substance, that the appointment had been wired to Davis & Shepherd; that this letter was in confirmation of the telegram; that the letter of appointment had been prepared "with the utmost care," though it was not signed, and that Davis & Shepherd, after having carefully read it, should make "whatever suggestions may occur to you for its modification or alteration in any particular," and return it to the office of the company for submission to its executive committee on the 16th of the month (May). This draft of letter of appointment is lengthy, and after the address, so far as material, is as follows:

"GENTLEMEN:
                    "WESTERN DEPARTMENT.

"Referring to my visit to your city in March last, and to your favor of the 24th of March, as well as to the visit of your Mr. John Shepherd in April to this city for the purpose of perfecting arrangements for the establishment of a branch of this company, to be hereinafter styled as its 'Western Department,'

with headquarters in your city, at Nos. 195-197 LaSalle street, we now take pleasure in advising you of your appointment as manager thereof, said appointment to date as and from the first of May, 1900.   *   *   *

"In a general way we desire our line kept down to a conservative basis, for the reason that a company of the limited size and comparative youth of the Fidelity may prove of more benefit to its agents by writing conservatively for the first two or three years of its existence and later on increasing its lines, than by writing excessive lines at the start and be compelled to reduce them later.   The Fidelity is in business to stay, and under your able representations should soon take a leading place in the agency field of the west.   *   *   *

"DURATION OF YOUR APPOINTMENT.

"It is mutually recognized that this appointment has for its object not only the efficient supervision and proper conduct of all the company's business in the territory placed under your jurisdiction, but the active cultivation and material increase in the volume of its business in that area, particularly in the preferred classes, which will not involve the undue writing of term business, as alluded to heretofore.   Our aim, which we understand to be shared by your good selves, is to establish a permanent insurance business in the territory assigned to you, on a solid basis and under conservative management, such as has been mutually discussed and agreed upon, and this contract is entered into between this company and your good selves with this understanding only."

The omitted parts of this letter refer to the territory covered by the agency, various details as to the conduct of the business, their office, its furnishings, books of account, bank account, and an estimate of the probable income of the business for its first, second and fifth years, and other matters which cover nineteen pages of typewritten matter in the record, and concludes as follows:

"In conclusion we desire to express the hope that our relations will prove mutually beneficial and of long duration and of the most harmonious nature.

"Awaiting the favor of your acknowledgment, touching upon all the features dealt with in this letter, I am, dear sirs,

"Yours very truly,

........................*President.*"

Under date of May 12, Davis & Shepherd reply to Courtney's letter of May 7, and state, among other things, that "we are enclosing you a copy of the draft of letter of appointment, with some few modifications," and then proceed to refer to nine different headings of the draft of the letter of appointment, but make no reference whatever to the duration of the agency. Their letter closes with the following language: "Trusting that the several matters may meet with your approval, we beg to remain," etc. Enclosed with this letter Davis & Shepherd returned the draft of letter of appointment with various marks and interlineations thereon, but leave that part thereof headed "Duration of your appointment," which has been above quoted, without any mark or modification.

Under date of June 14, 1900, Courtney wrote to Davis & Shepherd as follows: "Referring to our respects of the 7th of May, wherein we forwarded you a draft letter of appointment for your approval, and to your reply thereto of the 12th *idem*, containing your comments thereon, we now beg to advise you that we have re-written the said letter of appointment under the same date, viz., May 7, 1900, and incorporated therein such modifications as have proven necessary to accord with your suggestions. This we now enclose herein, and in order that the modifications referred to, and other matters needing comment, may be clearly understood, we recapitulate them under their several captions, as follows."

This letter then makes reference to all the suggestions of Davis & Shepherd contained in their letter of the 12th, and what had been done with reference thereto in the final letter of appointment, and closes with a request that Davis & Shepherd reply thereto in the "fullest detail without loss of time, and thus dispose, once and for all, of your appointment and its attendant conditions." The final letter of appointment was enclosed in this letter, and is the same as the original draft under the heading "Duration of your appointment," but in other re-

spects is modified as above stated.    To this letter Davis
& Shepherd replied, acknowledging the receipt of the
"letter of appointment," and also his letter setting forth
certain subjects concerning it, on which Courtney desired
information.    The letter then proceeds to give the infor-
mation referred to, and concludes as follows: "Trusting
that all the matters dealt with by you have been prop-
erly disposed of to your entire satisfaction, we are yours
most truly, Davis & Shepherd, managers."    This letter
contains no reference whatever to the duration of ap-
pointment, and so far as the record shows, nothing further
occurred between the parties thereafter with reference
to that subject, and nothing appears from the record but
this correspondence and the previous conversations be-
tween the parties relating to the term of the agency.

D. J. SCHUYLER, and THOMAS BATES, for appellants.

THOMAS TAYLOR, Jr., (J. W. TAYLOR, and GEORGE
WHITELOCK, of counsel,) for appellee.

JAMES C. HUTCHINS, and MAX BAIRD, for the Illinois
Trust and Savings Bank.

Mr. CHIEF JUSTICE HAND delivered the opinion of the
court:

From the view we take of this case it will be neces-
sary to consider but one question,—that is, was the firm
of Davis & Shepherd appointed western agents for the
Fidelity Fire Insurance Company for the period of five
years, or was their appointment for an indefinite period
of time and subject to termination by the insurance com-
pany upon its discontinuing its western agency.    From
a consideration of all the evidence in the record we think
it clear that the agreement between the insurance com-
pany and Davis & Shepherd must be found in the letter
of appointment bearing date May 7, 1900, and that all
the conversations and correspondence between the par-

ties leading up to that letter, and the acceptance of its terms by Davis & Shepherd, were in the nature of negotiations, and became merged in said letter of appointment when accepted.

The law is well settled that when parties reduce to writing their agreement as finally agreed upon by them, all prior negotiations leading up to the execution of the writing are merged in the writing, and that parol evidence is not admissible to explain, contradict, enlarge or modify the writing as it exists when executed. The writing, when executed, becomes the repository of the agreement between the parties. In *Memory* v. *Niepert*, 131 Ill. 623, on page 630, it is said: "Where parties have deliberately put their contract into writing, the rule doubtless is that the writing is the exclusive evidence of what the contract is." And in *Clark* v. *Mallory*, 185 Ill. 227 (p. 232): "While courts will uniformly endeavor to ascertain the intentions of the parties in construing a contract between them, and for that purpose will look into the surrounding circumstances at the time the contract was executed if the language of the instrument is ambiguous or its meaning uncertain, still, when the language employed is unequivocal, although the parties may have failed to express their real intention, there being no room for construction, the legal effect of the instrument will be enforced as written. Intention of the parties is not to be determined from previous understandings or agreements, but must be ascertained from the instrument itself which they execute as their final agreement, otherwise written evidence of an agreement would amount to nothing."

In the conversation in Chicago on March 22 between Courtney and the members of the firm, in the letter of March 24 written by the firm to Courtney, and in the conversation in April between John Shepherd and Courtney in Baltimore, it is doubtless true that Davis & Shepherd were seeking to obtain an appointment for five

years. This part of their proposition, however, does not appear to have been acceded to by the insurance company, and in the draft of the letter of appointment of May 7, as first sent to Davis & Shepherd, the duration of the time of their appointment was left indefinite. They were asked to examine the letter and to note such changes therein as they desired to have made. After an examination of the letter, which must have included an examination of the paragraph designated "Duration of your appointment," as it occupies a prominent position in the letter, Davis & Shepherd suggested a number of changes in the letter, none of which affected in any manner that part of the letter which fixed the duration of the time of their appointment, and the letter of appointment, upon the receipt of their suggestions, was re-written by the company in accordance with their suggestions, but no change was made in the duration of the time of their appointment. The letter, as re-written, was returned to them, and they accepted its terms, and their appointment thereunder, in writing. The proposition of Davis & Shepherd that they be given an appointment for five years, contained in the conversation had on the 22d of March, repeated in their letter of March 24 and referred to by John Shepherd when in Baltimore, was not accepted by the insurance company, but what, in effect, was a counter-proposition upon that subject was submitted by the company in the draft of the letter of May 7, which was sent to Davis & Shepherd for their examination and which they afterwards accepted in writing. In *Maclay* v. *Harvey*, 90 Ill. 525, it was held a letter written in reply to an offer, which re-states the terms of the offer but with some variations, though slight, can not be regarded as the consummation of a contract and requires an acceptance upon the terms thus stated, and until unequivocally accepted is only a mere proposition or offer. And in *Anglo-American Provision Co.* v. *Prentiss*, 157 Ill. 506, on page 513 it is said: "It is undoubtedly the

rule that where one party makes a proposition to another, an assent, to be valid so as to conclude an agreement or contract between the parties, must in every respect meet and correspond with the offer, neither falling short of nor going beyond the terms proposed, but exactly meeting them at all points and closing with them just as they stand."

We have no doubt the parties fully expected that the western agency of the insurance company and the business relation established between them would continue for some time,—perhaps for a period of years. Still, the time the western agency and the business relation between the parties were to continue was left indefinite by the agreement, and the insurance company was not bound to continue its western agency, and neither party, by the terms of the agreement, could require the other to continue the relation thereby established between them longer than such relation was agreeable to both.

In *Orr* v. *Ward*, 73 Ill. 318, the contract sued on was an employment contract, in writing, for a salary and commission, which provided for the payment to the employee of $2100 for the year 1873 and $2400 for the year 1874, in semi-monthly or monthly installments, and a commission on all sales in excess of $35,000. The appellee commenced work thereunder in January, 1873, and continued until June 11 of the same year, when the firm which had engaged him became insolvent and he was discharged. Suit was brought to recover damages for not continuing appellee in the service of the firm. The court, on page 319, said: "We are to judge of the contract by what it contains. Having reduced it to writing, we must presume the parties have embodied in it their entire agreement. It contains no stipulation the firm will retain appellee for two years or any other fixed period. Their undertaking is to pay him at a certain rate of compensation if he shall discharge the duties assumed by him to be performed. No doubt it is true

each party contracted on the supposition the business would continue through the space of two years, but appellant's firm did not obligate themselves to continue it for that length of time. As a matter of fact, it terminated much sooner. We have no authority to add to the contract as the parties have made it, enlarging the liability of either one of them, and have no disposition to do so."

If the duration paragraph be abbreviated by eliminating adjective and dependent phrases, it would then read as follows: "Our aim is to establish a permanent insurance business on a solid basis and under conservative management, such as has been mutually discussed and agreed upon;" and if it be admitted that this amounted to an agreement that the western agency should be permanently continued and for a permanent appointment, we think it still might be terminated at the will of either party. In *Lord* v. *Goldberg*, 81 Cal. 596, (15 Am. St. Rep. 82,) the plaintiff testified that he said, "While it is a very good increase in salary, will it be permanent?" to which the defendant answered, "It will; it will last; it will be permanent." It was held the hiring was for an indefinite period. And in *Gray* v. *Wulff*, 68 Ill. App. 376, in a suit for a wrongful discharge, it was shown that the plaintiff, a musician, had written the defendant previous to the employment, saying, "I would prefer your house if you can guarantee a long engagement," and that the defendant had replied, "Be here Thursday evening." It was held that the term "long engagement" has no certain meaning, and that there was no employment for a definite time, and that the defendant had the right to discharge the plaintiff on giving him the customary notice. In *Beck* v. *Walkers*, 24 Pa. Cir. Ct. 403, it was said: "Though by the contract the employment is made expressly a permanent employment, the law still holds that the term is indefinite." And in *Milner & Co.* v. *Hill*, 19 Ohio Cir. Ct. 663, an employment contract was made by the appellee writing to appellants, after some previous correspond-

ence: "Would you be kind enough to inform me what salary you will pay if only for the season, and what you will pay if for an annual or permanent position? And also please state whether the position soon to be vacant in your ingrain department is for the season or permanent." Appellants answered: "In reply would say that the position in our ingrain department will be a permanent one. * * * Come at once." After a breach alleged, the court say: "Either party might terminate the contract at any time. * * * It is simply a statement that he has entered into a business that is permanent rather than a temporary business, and it refers to the position itself, rather than to his employment for the position."

It is urged by appellants that the letter of appointment does not fully set forth the agreement between the parties, and therefore the case of *Orr* v. *Ward, supra,* and the other cases to the same effect cited by the appellee in its brief, do not apply to this case for that reason. We are of the opinion the letter of appointment does set forth the agreement between the parties, and that its terms are plain and unambiguous. While the agreement does not state the duration of the time of the appointment of Davis & Shepherd, but leaves the time of their appointment indefinite, that does not, in a legal sense, make the agreement uncertain or ambiguous. To admit parol evidence that the appointment was for a period of five years by reason of the fact that the time of their appointment is indefinite, would be to import into the agreement a provision which the parties deliberately omitted therefrom. In other words, to admit such testimony would be to make a new contract for the parties. This the court is powerless to do. *Vail* v. *Northwestern Mutual Life Ins. Co.* 192 Ill. 567.

Finding no reversible error in this record the judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*