DAVID H. MARTIN, Plaintiff-Appellant, v. THE CITY OF O'FALLON, Defendant-Appellee.

Fifth District    No. 5—95—0739

Opinion filed September 25, 1996.

Julie Keehner Katz, of Keehner, Cannady & Katz, of Belleville, for appellant.

John Baricevic, of Belleville, for appellee.

PRESIDING JUSTICE HOPKINS delivered the opinion of the court:

Plaintiff, David H. Martin, filed a five-count complaint against the City of O'Fallon (City) and four City employees. Plaintiff settled counts II through V, which alleged intentional infliction of emotional harm against each of the four City employees. On August 29, 1995,

the St. Clair County circuit court granted the City's motion to dismiss count I, which sought an order compelling the City to submit to arbitration. Plaintiff appeals from the order dismissing count I.

## I. ISSUE

We consider what appears to be a question of first impression in Illinois: whether the union, of which plaintiff was a member, may validly assign to plaintiff its right to demand arbitration under the collective bargaining agreement between the union and the City and, thus, compel the City to arbitrate directly with the employee rather than with the union or its designated representative. For reasons that we will fully explain, we affirm the trial court's dismissal of count I of plaintiff's complaint.

## II. FACTS

Plaintiff alleged in count I of the dismissed complaint that in 1982 he was employed by the City as an emergency medical technician (EMT), that he was later promoted to the position of paramedic, and that the City terminated his employment on December 8, 1992. Additionally, plaintiff alleged that during the entire period of his employment with the City, he was a member of the Teamsters, Automotive, Petroleum and Allied Trades Local Union No. 50 (the Union) and that "there was in full force and effect" from May 1, 1991, to April 30, 1994, an agreement between the City and the Union (the collective bargaining agreement). Plaintiff attached to the complaint a copy of the collective bargaining agreement.

The collective bargaining agreement states that its purpose is to establish "rates of pay, wages, hours of work, and conditions of employment to be observed by the parties hereto." The parties are listed as the City and the Union "and/or its successors." Under the collective bargaining agreement, the City agreed to recognize "the Union, its agents, representatives, or successors as the exclusive bargaining agent" for all City employees, including all EMTs and paramedics.

Article four of the collective bargaining agreement outlined the grievance procedure as follows:

> "*Section 2.* It is mutually agreed that any difference arising between the City and the Union or any employee of the City as to the meaning or application of the provisions of this Agreement such difference [*sic*] shall be settled in the following manner:
> * * *
> *Step 3.* If no agreement can be reached pursuant to the procedure specified in Steps 1 and 2 [oral and written grievances by employee and review by the Union's Business Representative and

the City's Director of Public Safety], the parties, upon written request of either party, shall submit the grievance to arbitration."

The remainder of the steps in the grievance procedure deal with how the three arbitrators are selected and paid for:

"In the event the City and the Union arbitrate, the City and Union agree to accept the decision of the majority [of the three-member arbitration board].

\*\*\*

The expense of the arbitrator selected by the City shall be borne by the City. The expense of the arbitrator selected by the Union shall be borne by the Union. The expense of the third arbitrator \*\*\* shall be borne equally by the City and the Union."

Plaintiff further alleged in count I that the day after he was discharged from his employment with the City, he filed a grievance, which was denied on or about December 15, 1992. By referring to filing a grievance and its denial, plaintiff apparently refers to steps one and two of the grievance procedure outlined in the collective bargaining agreement. Steps one and two are preliminary to step three, in which either the Union or the City requests arbitration.

Finally, plaintiff alleged that on or about June 22, 1993, plaintiff and the Union "entered into an Agreement." Plaintiff attached to the complaint a copy of the agreement between plaintiff and the Union, wherein the Union agreed to allow plaintiff to pursue arbitration against the City in exchange for plaintiff's agreement to pay the Union's share of the cost of the arbitration. In addition, the Union agreed that plaintiff and his attorneys would have the "sole discretion as to the arbitration procedure, presentation of evidence and any and all decisions concerning the prosecution of grievance and/or arbitration procedure," and in return, plaintiff released the Union "from all representational responsibility regarding the arbitration of his grievance protesting his suspension and discharge."

Plaintiff argues in his brief to this court that under the agreement he made with the Union, the Union assigned to plaintiff its right to demand arbitration. Therefore, we will hereinafter refer to the agreement between plaintiff and the Union as the assignment agreement or the agreement between plaintiff and the Union.

In count I of the complaint, plaintiff further alleged that "subsequent" to the date of the assignment agreement, plaintiff "demanded arbitration pursuant to the Agreement entered into by and between the City" and the Union; that the City "has refused and continues to refuse to arbitrate pursuant to" the collective bargaining agreement; and that "plaintiff has performed all conditions precedent concerning the right to arbitrate." The prayer for relief in

count I requested the court to enter an order compelling the City "to arbitrate the issues arising out of the termination" of plaintiff's employment "and all rights incidental to such termination pursuant to" the collective bargaining agreement.

In its motion to dismiss count I, the City alleged that its only obligation under the collective bargaining agreement was to engage in arbitration with the Union, that the City had "no obligation to engage in arbitration with plaintiff," and that the agreement between the Union and plaintiff was "ineffective to give plaintiff the *** Union's right to arbitrate with the City."

On August 29, 1995, the court conducted a hearing on the City's motion to dismiss. In that hearing, plaintiff's attorney argued essentially that the collective bargaining agreement between the City and the Union did not specifically prohibit an assignment to plaintiff of the Union's right to demand arbitration, so the court should allow the assignment.

The trial court disagreed with plaintiff and stated as follows:

> "THE COURT: *** I think it's clear from the [collective bargaining agreement] that this was an agreement by and between the City and the union where the union would be the bargaining agent for the employees. Question, first of all, can an agreement between the union and one of its members bind the City when the City was not a signatory, that is, not a party? The plaintiff in this cause of action has alleged that there was a valid assignment and that [the collective bargaining agreement] did not forbid [such an] assignment. In other words, the document is silent as to whether or not it could be done. The Court in basic contract law is required to give any document [its] common meaning and accepted reasonable understanding. And it is clear that this is the type of provision that would countermand [the collective bargaining agreement's] whole purpose, that is, that the union was going to be the collective agent representing the employees. And I believe clearly that this provision would have been added were it the contemplation of either of the parties, not just the City, but of [the] union. It is my further belief that the union would not be inclined to agree to such a provision. I would grant the motion to dismiss."

We note that the trial court, in referring to "this provision," apparently meant a provision allowing the Union to assign its right to demand arbitration to a person such as plaintiff.

## III. ANALYSIS

■ Plaintiff appeals from the dismissal of count I, arguing that the trial court erred in dismissing the count because the language of the assignment agreement was sufficient to create an assignment.

Plaintiff argues that no particular form of words is necessary to create a valid assignment. As a general rule, where the right is assignable, any language that demonstrates the intent to transfer some identifiable property from one party to another for valuable consideration is sufficient to establish an assignment. *Hobart v. Hale*, 132 Ill. App. 3d 845 (1985).

The City responds that the purported assignment from the Union to plaintiff was not valid, as the collective bargaining agreement between the City and the Union was personal and not assignable. The City compares the collective bargaining agreement to a personal services contract, arguing that the Union cannot assign its right to arbitrate to a third party due to the personal nature of the collective bargaining agreement. We agree.

■ "The general right of a party to choose with whom he or she contracts underlies any determination of whether a contract is assignable." *First Illinois National Bank v. Knapp*, 246 Ill. App. 3d 152, 155 (1993). Where the personal qualities of either party are material to the contract, the contract is not assignable without the assent of both parties. *Knapp*, 246 Ill. App. 3d at 155. The City argues that under the collective bargaining agreement in the case at bar, the Union and the City mutually agreed to develop a relationship that would enhance the employees as a unit and that the employees gave up their individual rights to negotiate wages and other employment benefits in exchange for the strength of a collective bargaining unit. We agree that the personal nature of the roles of each party under the collective bargaining agreement prevents either party from assigning to a third party its right to demand arbitration.

First, we base our decision upon general, basic rules of contract law. The cardinal rule for the construction of any contract is to ascertain and give effect to the intentions of the parties. *Meyer v. Marilyn Miglin, Inc.*, 273 Ill. App. 3d 882 (1995). As we have previously set forth, in the collective bargaining agreement the City agreed:

> "to recognize *** the Union, its agents, representatives, or successors as the *exclusive bargaining agent* for all full-time and regular part-time [EMTs and paramedics and] all other employees of the City." (Emphasis added.)

The only parties to the agreement are the City and the Union "or its successors." Under the clear and unambiguous terms of the collective bargaining agreement, the City has agreed to submit to arbitration exclusively with "the Union, its agents, representatives, or successors." Reference to the Union as "the exclusive bargaining agent" for all City employees makes the intent of the parties clear: arbitra-

tion is to take place solely between the Union and the City, and the City has specifically agreed not to bargain or arbitrate with any other parties, including a third party such as plaintiff. That the Union in the case at bar is unwilling to incur the cost of arbitrating plaintiff's dispute is a risk inherent to unionized employment and one accepted by plaintiff and the other employees of the City as a condition of employment. That plaintiff wants to arbitrate the issue himself does not obligate the City to arbitrate with plaintiff.

Recently, the Seventh Circuit Court of Appeals considered an analogous question of whether certain collective bargaining agreements allow for tripartite arbitration, or arbitration between the employer and two unions, one union that signed one collective bargaining agreement and another union that signed another related collective bargaining agreement. In deciding this question, the court based its decision upon the terms of the collective bargaining agreement involved. In *Miron Construction Co. v. International Union of Operating Engineers, Local 139*, 44 F.3d 558, 562 (7th Cir. 1995), the court stated that even a general willingness of the parties to arbitrate cannot serve as the authority for ordering arbitration. "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Miron Construction Co.*, 44 F.3d at 562, citing *AT&T Technologies, Inc. v. Communications Workers*, 475 U.S. 643, 648, 89 L. Ed. 2d 648, 655, 106 S. Ct. 1415, 1418 (1986), quoting *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582, 4 L. Ed. 2d 1409, 1417, 80 S. Ct. 1347, 1353 (1960).

As a second and equally compelling basis for our decision, we find that the terms of the National Labor Relations Act (the Act) (29 U.S.C.A. § 151 *et seq.* (West 1973)) and the cases construing the Act mandate our holding that the Union cannot validly assign to plaintiff under this collective bargaining agreement its right to demand arbitration.

First, the Act states that it is "the policy of the United States" to encourage "the practice and procedure of collective bargaining" and to protect "the exercise by workers of full freedom of association, self-organization, and designation of representatives of their own choosing, for the purpose of negotiating the terms and conditions of their employment or other mutual aid or protection." 29 U.S.C.A. § 151 (West Supp. 1996). It is contrary to the stated policy of the Act to allow the Union to assign its rights and obligations of collective bargaining to one of its members, for whom the Union was organized to protect and represent.

By the same token, it is antithetical to the protection of the other

members of the Union to allow plaintiff to have the sole discretion as to the arbitration process, when the decision of the arbitrators in plaintiff's case may ultimately affect other workers with similar disputes. "Representatives designated or selected for the purposes of collective bargaining by the majority of the employees in a unit appropriate for such purposes, *shall be the exclusive representatives of all the employees* in such a unit for the purposes of collective bargaining in respect to rates of pay, wages, hours of employment, or other conditions of employment ***." (Emphasis added.) 29 U.S.C.A. § 159(a) (West 1973).

Clearly, the other members of the Union did not designate or select plaintiff to represent them, nor did they have any control over or input into the purported assignment to plaintiff of the Union's rights and obligations as to collective bargaining. It is equally clear that the attempted assignment is not contemplated by the Act. In *National Labor Relations Board v. Jones & Laughlin Steel Corp.*, 301 U.S. 1, 81 L. Ed. 893, 57 S. Ct. 615 (1937), the Supreme Court construed section 159(a) of the Act to require employers to negotiate exclusively with the chosen representative of the employees, to the extent that the employer is under a negative duty to negotiate with no party other than the designated representative.

In the case at bar, the City did not agree to enter into arbitration with any party other than the Union or its agents, representatives, or successors. The attempted assignment of the Union's right to arbitrate plaintiff's dispute fails for the reason that the City did not agree in the collective bargaining agreement to arbitration with plaintiff. Therefore, the trial court properly granted the City's motion to dismiss count I of plaintiff's complaint.

Affirmed.

WELCH and RARICK, JJ., concur.