CARRIE BASS, Indiv. and on Behalf of All Others Similarly Situated, Plaintiff-Appellant, v. PRIME CABLE OF CHICAGO, INC., Defendant-Appellee.

First District (2nd Division)   No. 1—94—3033

Opinion filed September 30, 1996.

Holstein, Mack & Klein, of Chicago (Aron D. Robinson and Matthew H. Berns, of counsel), for appellants.

Daley & George, Ltd., of Chicago (John J. George and Catherine S. Wilson, of counsel), for appellee.

JUSTICE BURKE delivered the opinion of the court:

Plaintiff Carrie Bass appeals from an order of the circuit court granting defendant Prime Cable of Chicago, Inc.'s motion for summary judgment pursuant to section 2—1005 of the Illinois Code of Civil Procedure. 735 ILCS 5/2—1005 (West 1992). On appeal, plaintiff contends that the trial court erred in: (1) finding that no genuine issue of material fact existed regarding certain cable television-related charges by defendant to its customers; (2) finding that federal law preempted it from deciding that defendant's practice of "passing through" three city-imposed expenses to plaintiff, related to television service fees, constituted breach of contract and violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (815 ILCS 505/2 (West 1992)); and (3) granting summary judgment in defendant's favor (a) with respect to plaintiff's claim that defendant's discontinuation of a "free" cable guide constituted breach of contract and (b) with respect to plaintiff's Consumer Fraud Act claim regarding the "free" cable guide. Plaintiff's arguments concerning these three charges to defendant's customers, of which plaintiff was one, are based on plaintiff's contention "that these charges were, in fact, impermissible 'pass throughs' rather than rate increases preemptively permitted by federal law." For the reasons stated below, we affirm.

In 1985, plaintiff Carrie Bass entered into a contract for television cable services with Group W Cable Associates of N.W. Chicago (Group W), defendant's predecessor in interest, which was governed by an agreement entered into between the City of Chicago (City) and

Group W (franchise agreement). Pursuant to the contract, Group W agreed to provide, in addition to cable service, a monthly cable television guide at no charge. The contract did not provide a date, time or event when it was to terminate. In June 1990, defendant Prime Cable of Chicago, Inc., acquired Group W, assumed all of its cable service contracts, including the one at issue in this case, and became governed by the franchise agreement between the City and Group W. It was undisputed that the City is not permitted to regulate defendant's rates under the Cable Communications Policy Act of 1984 (47 U.S.C. § 521 *et seq.* (1994)) because defendant was subject to "effective competition."

Under the franchise agreement, defendant was required to pay the City a franchise fee of not less than 5% of defendant's annual gross revenues pursuant to the City of Chicago communications ordinance (ordinance). This franchise fee is in consideration for the privilege of operating a cable franchise within the public ways of the City. Until June 1991, defendant had paid the franchise fee out of its operating revenues. In June 1991, defendant began to pass the cost of the franchise fee directly to its cable customers as a separate line item on its customers' bill for cable services. Prior to passing this cost on to its cable customers, however, defendant, in May 1991, notified plaintiff and its other customers by letter of the new franchise fee charge on their bill for cable services, stating:

> "[E]ffective with your June 1991 billing, we will 'pass through' the franchise fee as a separate line item on your cable bill. If, for example, your cable bill is $20.00, you will see an additional 5% or $1.00 added to your bill. This $1.00 fee will be paid to the City and is not income to us. Your rates for cable television service will remain the same."

In June 1991, plaintiff received a cable bill from defendant with the 5% franchise fee charge on her bill. Plaintiff paid the bill and thereafter continued to pay the franchise fee, which appeared as a separate line item on her monthly cable bill.

In May 1992, defendant also notified plaintiff that the cable guide would no longer be provided free of charge. Defendant's notice stated:

> "[B]eginning June 1st, your cableview entertainment guide will be $.99 a month. Unless we hear from you by May 15, 1992, May will be your last issue of the Cableview guide."

Plaintiff did not respond to defendant's notice and, as a consequence, defendant cancelled plaintiff's cable guide subscription. Nonetheless, plaintiff continued to receive and pay for cable services and, in October 1992, ordered the cable guide for the additional charge of $.99.

All franchise grantees were also required to pay a further fee to the Chicago Access Corporation (CAC), a not-for-profit corporation created under the City's ordinance for the purpose of promoting and developing maximum community involvement in the use of cable access channels. The franchise agreement between the City and defendant required that defendant pay directly to CAC an initial capital investment plus 1% of its annual gross revenues (not to exceed an annual cap of $1 million). In September 1992, defendant began to pass this 1% charge directly to its customers. Prior to this time, defendant had paid the CAC fee out of its operating revenues. Defendant provided plaintiff with written notice of this charge in August 1992, which stated that her bill would "begin to reflect an additional charge of $.38 per month." Plaintiff paid this bill and thereafter continued to pay the CAC fee, which appeared as a separate line item on her monthly cable bill.

On October 6, 1992, the City of Chicago's Cable Commission (Commission) adopted a resolution that directed defendant to "cease the itemization and collection of [the] 'CAC Assessment' until such time as the Corporation Counsel has issued its opinion on this matter." Defendant continued charging this fee to its customers. On February 9, 1993, the Commission adopted a second resolution, which rescinded the October 6, 1992, resolution.

On April 8, 1993, plaintiff filed a six-count amended class action complaint against defendant alleging that (1) defendant's discontinuation of the free cable television guide and (2) defendant's passing through of the franchise and CAC fees to plaintiff were in breach of contract and in violation of the Consumer Fraud Act.

On September 29, 1993, defendant filed a motion for summary judgment, arguing that by including the three additional charges on its customers bills, defendant was modifying a terminable-at-will contract and that plaintiff, by continuing to pay for and receive cable services, ratified the modifications. The trial court granted summary judgment in favor of defendant on all counts, finding that no genuine issue of material fact existed, that federal law preempted a state or local authority from prohibiting a "pass through" charge and that the additional charges were modifications of a terminable-at-will contract that plaintiff ratified by continuing to pay for and receive cable service. This appeal followed.

Plaintiff contends that the trial court erred in granting summary judgment in defendant's favor because a genuine issue of material fact existed regarding whether the billing charges for the franchise and CAC fees were rate increases or "pass throughs" of existing fees. More specifically, plaintiff argues that the charges for the franchise

and CAC fees did not constitute a rate increase, "preemptively permitted by federal law" prohibiting local restrictions on rate increases, but rather impermissible pass-through fee charges to her, which are not preempted by federal law. Plaintiff further contends that additional questions of fact remain regarding whether defendant continued to pass the CAC charge to its subscribers following the Chicago Cable Commission's October 6, 1992, resolution directing defendant to cease this practice and, "if the billing changes were found to be rate increases," whether defendant gave plaintiff proper notice of "the purported 'rate' increase." Defendant argues that the trial court properly found that no genuine issue of material fact existed.

■ Summary judgment shall be granted if the pleadings, depositions and admissions on file, together with affidavits, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2—1005(c) (West 1992); *Maher & Associates, Inc. v. Quality Cabinets*, 267 Ill. App. 3d 69, 640 N.E.2d 1000 (1994). In determining the existence of a genuine issue of material fact, the court must construe the pleadings, depositions, admissions, and affidavits in a light most favorable to the nonmoving party. *Purtill v. Hess*, 111 Ill. 2d 229, 489 N.E.2d 867 (1986). On appeal from an order granting summary judgment, the standard of review is *de novo. USG Corp. v. Sterling Plumbing Group, Inc.*, 247 Ill. App. 3d 316, 617 N.E.2d 69 (1993).

■ We agree with defendant that no genuine issue of material fact existed. First, whether defendant's action in passing through the franchise and CAC fees to its customers constituted rate regulation is a question of law, not of fact, which the trial court properly considered. Secondly, defendant admitted that it continued to pass the CAC fee on to its subscribers following the October 6, 1992, resolution and, therefore, there is no issue of material fact.

■ With respect to plaintiff's notice argument, defendant argues that plaintiff has waived this issue on appeal because she failed to raise it in the trial court. In response, plaintiff asserts that this issue is not waived and refers this court to specific pages of the transcript of the hearing on defendant's motion for summary judgment on August 12, 1994. Plaintiff argued therein, based on her position that the franchise and CAC charges were pass-through charges, rather than rate increases, as follows:

> "And if they wanted to *raise their rates*, they needed to take certain steps which would include a notification to the Chicago Cable Commission as well as to the customers that they were going to *raise their rate.*

122

\* \* \*

They didn't raise their rates as they now contend \*\*\*. They passed the charges through. While they had the ability, *upon following proper guidelines and procedures to raise their rates*, and that's what they are effectively arguing they could have done, they didn't do that. They passed the charges through.

\* \* \*

\*\*\* So they can't say that they raised their rates because (1) *they didn't follow proper procedures* and (2) they themselves in 1991 said it wasn't a rate increase.

\* \* \*

Well, it wasn't a rate increase, and even if it was, your Honor, *they didn't follow the proper procedures* that they admit in their reply brief they had to follow, *which was to simply send out notice of that rate increase. They didn't send out notice of that rate increase.*" (Emphasis added.)

In a footnote in plaintiff's reply brief on appeal, she states that "notice of an *unauthorized* pass through is irrelevant in any event." (Emphasis added.) Accordingly, plaintiff's argument in the trial court was that defendant failed to notify plaintiff and the other subscribers that the "new" charges were a rate increase. Plaintiff clearly did not argue the inadequacy of the actual pass-through notices sent by defendant. Thus, plaintiff's argument on appeal, that the "pass through" notices sent by defendant "to its subscribers concerning the nature and purpose for the billing changes [were] vague at best, and deliberately misleading at worst" and "blam[ed] the billing increase on the City and the CAC," clearly is not the same argument she raised in the trial court. We find, therefore, that plaintiff has waived this argument by failing to raise it at trial. *United States Fidelity & Guaranty Co. v. Specialty Coatings Co.*, 180 Ill. App. 3d 378, 535 N.E.2d 1071 (1989). Notwithstanding plaintiff's waiver, we briefly note that it is undisputed that defendant's notices explained the billing changes, *i.e.*, that the charges represented expenses previously paid by defendant to the City and CAC, which it was passing on to its subscribers.

Plaintiff next contends that the trial court erred in granting summary judgment in defendant's favor with respect to plaintiff's claim that defendant's action in passing through the franchise and CAC fees to plaintiff constituted breach of contract and violation of the Consumer Fraud Act based on the court's determination that federal law preempts state and local authorities from controlling pass-through charges. Defendant argues that any prohibition of pass throughs would constitute a form of rate regulation preempted by federal law.

■ In determining whether a federal law preempts a state regulation, a court should "ascertain Congress' intent in enacting the federal statute at issue." *Cable Television Ass'n v. Finneran*, 954 F.2d 91, 95 (2d Cir. 1992). Where it appears that Congress intended exclusive federal regulation of the area in question, then the state law cannot stand. Absent such an intent, the state rule will fall only if it actually conflicts with the federal statute. *Finneran*, 954 F.2d at 95; see also 47 U.S.C. § 556(c) (1988). Under the doctrine of preemption, state law includes legal duties imposed by the common law. *CSX Transportation, Inc. v. Easterwood*, 507 U.S. 658, 123 L. Ed. 2d 387, 113 S. Ct. 1732 (1993).

■ The federal Cable Communications Policy Act of 1984 (Cable Act), which specifically preempts rate regulation by state and local authorities, provides:

"Any *** State may not regulate the rates *for the provision of* cable service except to the extent provided for under this section." (Emphasis added.) 47 U.S.C. § 543(a)(1) (1988).

Section 543 of the Cable Act grants to local franchising authorities the power to regulate the rates in circumstances "in which the cable system is not subject to effective competition."[1] 47 U.S.C. § 543(b)(1) (1988). "Rate regulation" within the context of the Cable Act includes a state cable regulatory agency's restriction on the pass through of expenses. *Westmarc Communications, Inc. v. Conn. Dept. of Public Utility Control*, 807 F. Supp. 876, 884-89 (D. Conn. 1990).

In *Westmarc*, the court held that the Cable Act preempted a state cable regulatory agency from imposing a restriction on the pass through of a fine incurred by the cable company for its negligent failure to renew an operating permit. The *Westmarc* court concluded that the pass-through restrictions sought to be imposed by the agency were in substance a "trapping" of costs on the shareholders of the cable company so that they would not be passed on to the customers. According to the *Westmarc* court, this is exactly the type of rate regulation that Congress sought to preempt in enacting the preemptive provisions of the Cable Act. *Westmarc*, 807 F. Supp. at 876; see also *Mobile Oil Corp. v. Dubno*, 492 F. Supp. 1004 (D. Conn. 1980), *aff'd in part & dismissed in part*, 639 F.2d 919 (2d Cir. 1981) (holding that a state law prohibiting a pass through of a gasoline tax to customers was preempted by federal law).

Here, plaintiff essentially is asking this court to place a restric-

---

[1]"Effective competition" is defined as service to the area of six unduplicated broadcast signals. 47 U.S.C. § 543 (1988).

tion on the pass through of fees imposed by the City of Chicago. Like the fees at issue in *Westmarc*, the fees here have been imposed on defendant in order to assist in the regulation of the local cable industry. A holding in plaintiff's favor would be tantamount to the City passing a law that forbids cable companies from passing through city-imposed fees to customers—a law that the *Westmarc* court specifically held as preempted by federal legislation.

Plaintiff attempts to distinguish the facts of her case from *Westmarc*, arguing that the *Westmarc* court recognized preemption only in the regulation of *newly imposed* charges and not, as is the case here, on charges that defendant has been obligated to pay since 1985. Plaintiff maintains that she has already paid the franchise and CAC fees as part of the cable rate calculated by defendant. Plaintiff also notes that section 542 of the Cable Act permits a pass-through charge for rate increases, mandates a pass through for rate decreases and is silent regarding a pass through for already existing fees. 47 U.S.C. § 542 (1988). Therefore, plaintiff argues that a prohibition of a pass-through charge of existing fees would not conflict with the Cable Act.

■ We find plaintiff's argument unpersuasive. Plaintiff has failed to make any allegation in her amended complaint that she has been "double-billed" for these charges. In fact, paragraph 17 of plaintiff's amended complaint states that defendant had never charged her for these fees prior to 1991, when these charges first appeared on plaintiff's bills. Further, plaintiff's reliance on section 542 is misplaced since that section applies only to those cable operators whose rates are regulated; defendant is not a rate-regulated operator.

During oral argument, plaintiff provided another "distinction" of the *Westmarc* decision. According to plaintiff, *Westmarc* was limited to restrictions on the pass through of *fines*, and since the case at bar concerns a restriction on the pass through of *fees*, *Westmarc* is not controlling in the case at bar. Plaintiff's distinction is contrary to the reasoning employed by the *Westmarc* court. The *Westmarc* court stated that its decision was not limited to restrictions on the pass through of "negligently incurred costs." *Westmarc*, 807 F. Supp. at 888.

Plaintiff also argues that the holding in *Westmarc* was abandoned by the Second Circuit Court of Appeals in *Finneran*. We note that the *Finneran* court, without citing *Westmarc*, held that a local cable regulator was not preempted by federal law from limiting "downgrade" charges imposed by cable companies. Downgrade charges are charges imposed on cable customers who elect to move from a higher priced level of cable service to a lower priced level of cable service. The *Finneran* court strictly construed the preemption provision of

the Cable Act, which provides that a "State may not regulate the rates *for the provision of* cable service." (Emphasis added.) 47 U.S.C. § 543(a) (1988). The *Finneran* court reasoned that there is no direct conflict with federal law because the state is not regulating rates "for the provision of" cable services.

Unlike the charges in *Finneran*, which *were not* "for the provision of" cable services, the pass-through charges at issue in the present case *were* "for the provision of" cable services. In order for cable customers to receive cable services, they had to pay the franchise fee and the CAC fee. Thus, these charges fall within the scope of the Cable Act's preemption provision because the charges were paid in exchange for cable service provided by defendant.

Plaintiff further argues, citing *dicta* from *Time Warner Entertainment Co. v. FCC*, 56 F.3d 151 (D.C. Cir. 1995), that the Cable Act was not meant to preempt the litigation of claims based on state consumer protection laws, so long as the laws do not "run afoul" of the federal prohibition against rate regulation. Because the *Time Warner* court was not faced with the issue of whether pass-through restrictions were preempted by state law, *Time Warner* lends no support to plaintiff's argument here. Furthermore, as discussed above, the enforcement of plaintiff's claims would "run afoul" of the preemption provisions of the Cable Act.

▮ Plaintiff also contends that the trial court erred in finding that the Cable Act permits pass-through charges based on the court's determination that defendant acted "consistent with the 1984 Cable Act and case law," as well as the fact that the "Chicago Ordinance and the Franchise Agreement are silent as to 'pass through' charges" and, "so long as notice was made to the parties, as it was in this case, the 'pass through' of the fees was valid." Because we hold that plaintiff's claims based on the pass through of City-imposed fees are preempted by federal law, we need not address this issue. The order of the trial court granting summary judgment to defendant on all counts relating to the pass through of the franchise and CAC fees is therefore affirmed.

Plaintiff next contends that the trial court erred in granting summary judgment in defendant's favor with respect to her claim that defendant's discontinuance of the "free" cable guide constituted a breach of contract based on the trial court's determination that defendant's decision to begin charging for the monthly cable guide was a modification of a terminable-at-will contract which plaintiff ratified by continuing to pay for and to receive cable services. Alternatively, plaintiff maintains that even if defendant's decision to charge for the cable guide was a contract modification, the modification was invalid because it was not supported by consideration.

Defendant contends that the trial court properly granted summary judgment on this issue because defendant's actions constituted a valid contract modification that plaintiff ratified by paying for and receiving defendant's services.

■ A contract without a specified duration is terminable at will by either party. *Alderman Drugs, Inc. v. Metropolitan Life Insurance Co.*, 161 Ill. App. 3d 783, 515 N.E.2d 689 (1987). A terminable-at-will contract may be unilaterally modified. *Garber v. Harris Trust & Savings Bank*, 104 Ill. App. 3d 675, 432 N.E.2d 1309 (1982) (holding that a credit issuing bank did not breach a credit agreement when it unilaterally modified the terms); see also *Langendorf v. Irving Trust Co.*, 244 Ill. App. 3d 70, 614 N.E.2d 23 (1992) (extending *Garber* beyond credit card cases). A contract modification must satisfy all of the requirements of a valid contract, including the requirement of consideration. *American Hospital Supply Corp. v. Hospital Products Ltd.*, 780 F.2d 589 (7th Cir. 1986). A party to a terminable-at-will contract provides consideration for a contract modification by providing services that it is not obligated to provide in the future. *Garber*, 104 Ill. App. 3d at 683.

■ Here, the contract between plaintiff and defendant is terminable at will because the contract does not provide for a cancellation date or event. Therefore, defendant was under no duty to provide cable services after the end of each billing period. When defendant modified the terms of the contract by discontinuing the "free" cable guide, its continued provision of cable services constituted sufficient consideration because it undertook to perform a duty under the new terms that it previously was not obligated to perform. *Garber*, 104 Ill. App. 3d at 683.

We briefly note that plaintiff's argument that *Garber* should be limited to contracts regarding credit cards is without merit. Plaintiff overlooks this court's decision in *Langendorf*, which recognized that *Garber* "did not limit its [holding] to credit card cases." *Langendorf*, 244 Ill. App. 3d at 79.

Plaintiff also contends that the trial court erred in concluding that plaintiff voluntarily ratified the contract modifications by paying for and continuing to use the cable service and, therefore, that plaintiff waived her contractual rights. Because we hold that the contract modification was supported by sufficient consideration, we need not address this issue. We therefore hold that summary judgment in defendant's favor was proper with respect to plaintiff's breach of contract claim regarding defendant's discontinuation of the "free" cable guide.

Lastly, plaintiff contends that the trial court erred in granting

summary judgment in defendant's favor with respect to her consumer fraud claims that defendant acted unfairly or deceptively by requiring her to pay the franchise and CAC fees and in discontinuing the "free" cable guide. Defendant counters that plaintiff failed to allege facts showing that defendant acted unfairly or deceptively and that plaintiff failed to meet the necessary "materiality" element of a Consumer Fraud Act cause of action.

In order to state a cause of action under the Consumer Fraud Act, "a plaintiff must allege: (1) a statement by the seller; (2) of an existing or future material fact; (3) that was untrue, without regard to the defendant's knowledge or lack thereof of such untruth; (4) made for the purpose of inducing reliance; (5) on which the victim relied; and (6) which resulted in damages to the victim." (Emphasis omitted.) *Duran v. Leslie Oldsmobile, Inc.*, 229 Ill. App. 3d 1032, 1041, 594 N.E.2d 1355 (1992).

In *Lehrman v. South Chicago Cable, Inc.*, 210 Ill. App. 3d 346, 352, 569 N.E.2d 99 (1991), the plaintiff sued the defendant cable company under the Consumer Fraud Act alleging damages arising from the defendant's statement that the charge for two additional cable outlets would be free. While the installation of the two additional cable outlets was provided at no additional charge, the defendant began to charge the plaintiff for the use of converters at each outlet. The *Lehrman* court held that no question of material fact existed as to the materiality requirement of the Consumer Fraud Act because the plaintiff continued to receive the cable service in the new additional outlets after learning about the converter charge and, therefore, summary judgment was proper. *Lehrman*, 210 Ill. App. 3d 346.

As in *Lehrman*, plaintiff in the present case has failed to present a genuine issue of material fact with respect to the alleged misrepresentation of a *material* fact by defendant. After learning that the cable guide would no longer be provided free of charge, plaintiff continued to use defendant's cable service. Subsequently, plaintiff even ordered the cable guide, agreeing to pay the new charge of $.99. These facts illustrate that there was no genuine issue of material fact with respect to the Consumer Fraud Act's requirement of a material misleading fact. With respect to the franchise and CAC fees, defendant also notified plaintiff of both before plaintiff was required to pay these charges. Accordingly, summary judgment was proper on this issue.

We briefly note that plaintiff attempts to distinguish *Lehrman* on the ground that the notices in *Lehrman* were not materially misleading because the defendant cable company, being "true to its notices,"

128

continued to provide free services to the additional outlets. This alleged distinction overlooks the principal fact upon which the *Lehrman* court relied, *i.e.*, that the plaintiff continued to use the cable services with full knowledge of the converter charge. Similarly, in the case at bar, plaintiff continued to use the cable services with full knowledge of the additional franchise and CAC charges, as well as the cable guide charge which she subsequently subscribed to at the new charge.

█ Plaintiff also argues that summary judgment was improper because defendant did not provide plaintiff with the requisite notice under the Consumer Fraud Act. As discussed above, plaintiff waived this issue. We briefly note, and concur with, the trial court's determination that defendant met the notice requirements related to the pass through of the franchise and CAC fees under federal law.

Affirmed.

HARTMAN, P.J., and DiVITO, J., concur.