(No. 83728.—

VICTOR R. JESPERSEN, Appellant, v. MINNESOTA MINING AND MANUFACTURING COMPANY, Appellee.

*Opinion filed June 18, 1998.—Rehearing denied October 5, 1998.*

HARRISON, J., joined by BILANDIC, J., dissenting.

Richard William Austin and Michele E. Sibley, of Pretzel & Stouffer, Chrtd., Kevin M. Forde, Kathleen K. Cirrincione, Mary Anne Mason and Kevin R. Malloy, of Kevin M. Forde, Ltd., and Keith L. Davidson, all of Chicago, for appellant.

Richard C. Godfrey, J. Robert Robertson and Andrew B. Bloomer, of Kirkland & Ellis, of Chicago, for appellee.

JUSTICE HEIPLE delivered the opinion of the court:
It has long been recognized that contracts of indefinite duration are generally terminable at the will of the parties.[1] This case involves a twist on that general rule: where the parties specifically provide that their contract

---

[1]See *Duldulao v. Saint Mary of Nazareth Hospital Center*, 115 Ill. 2d 482, 489 (1987); *Joliet Bottling Co. v. Joliet Citizens' Brewing Co.*, 254 Ill. 215, 219 (1912) (because the contract did not fix a time "during which the agreement should continue in force, it was terminable at the will of either party"); *Davis v. Fidelity Fire In-*

*may* be terminated for enumerated instances of material breach, is the contract indefinite as to duration and terminable at will, *or* is it terminable only for cause? The courts below held that such a contract is terminable at will. We affirm.[2]

This case is before the court on review from an order granting a motion to dismiss the plaintiff's complaint for failure to state a cause of action for breach of contract. 735 ILCS 5/2—615 (West 1994). In reviewing such a case, all well-pleaded facts and all reasonable inferences from them are admitted as true and interpreted in the light most favorable to the nonmoving party. *In re Chicago Flood Litigation*, 176 Ill. 2d 179, 189 (1997); *Mt. Zion State Bank & Trust v. Consolidated Communications, Inc.*, 169 Ill. 2d 110, 115 (1995). In his attempt to state a cause of action for breach of contract, the plaintiff has alleged as follows. In 1978, Victor R. Jespersen (the plaintiff) entered into a sales distribution agreement (the agreement) with Trim-Line, Inc. (Trim-Line), a manufacturer of auto body trim, moldings and decoration. Under the agreement, Jespersen became the exclusive distributor of Trim-Line products in the Chicago area.

Subsequently, Minnesota Mining and Manufacturing Company (3M) purchased Trim-Line. In 1991, 3M instituted a plan to dissolve Trim-Line and to merge that business into 3M's Automotive Trades Division. 3M sent a letter to Jespersen, and all Trim-Line distributors, terminating the agreement.

Jespersen and two other terminated distributors filed

---

*surance Co.*, 208 Ill. 375 (1904); see also 1 R. Lord, Williston on Contracts § 4:19, at 442-44 (4th ed. 1990).

[2]The contract in this case states that it shall be construed in accordance with California law. Throughout the litigation, however, the parties have relied primarily on Illinois law and have not raised the issue of California law. Accordingly, we will construe the contract under Illinois law and offer no opinion on whether a different result would obtain under California law.

a class action complaint in the circuit court of Cook County, alleging that 3M breached the agreement by terminating it. After much procedural wrangling, the circuit court dismissed Jespersen's third-amended complaint for failure to state a cause of action (735 ILCS 5/2—615(a) (West 1994)) on the grounds that the agreement (1) was of indefinite duration and thus terminable at will and (2) expressly granted 3M the right to cancel a distributor's right to use the Trim-Line name.

Jespersen appealed and argued that the agreement included specific termination events and thus could be terminated only for cause. The appellate court rejected this argument and affirmed with one dissent. 288 Ill. App. 3d 889. The appellate court held that the agreement was indefinite in duration and thus terminable at will. We allowed leave to appeal.

May 3M terminate its agreement with Jespersen absent Jespersen's breach or default? The answer to this question, of course, depends upon the terms of the contract. The agreement here provides that it "shall continue in force indefinitely" unless terminated in the manner provided in article IV. Contracts of indefinite duration are terminable at the will of either party. *Duldulao*, 115 Ill. 2d at 489; *Joliet Bottling*, 254 Ill. at 219. An agreement without a fixed duration but which provides that it is terminable *only* for cause or upon the occurrence of a specific event is in one sense of indefinite duration, but is nonetheless terminable only upon the occurrence of the specified event and not at will. See, *e.g.*, *R.J.N. Corp. v. Connelly Food Products, Inc.*, 175 Ill. App. 3d 655, 660 (1988); *Dawson v. W. & H. Voortman, Ltd.*, 853 F. Supp. 1038, 1042 (N.D. Ill. 1994) (applying Illinois law). The agreement here addressed termination as follows:

"4.01 Trim-Line's Right To Terminate
Trim-Line may, upon not less than thirty (30) days

notice to the Distributor, terminate this agreement for any of the following reasons:

(a) Distributor's failure to reasonably promote Trim-Line's products ***.

(b) Distributor's breach of any term or condition of this agreement.

(c) Distributor's failure to make payment ***.

(d) The death, bankruptcy, or insolvency of Distributor ***.

(e) The sale *** or transfer *** of all or any part of the Distributor's rights under this contract without the written approval and consent of Trim-Line.

4.02 Distributor's Right To Terminate

Distributor may terminate this agreement upon thirty (30) days written notice to Trim-Line."

This termination provision is not sufficient to take this agreement of indefinite duration out of the general rule of at-will termination for two reasons. First, the language of the termination provision is permissive and equivocal; a party "may" terminate for the stated grounds—the clear inference being that those grounds are not the sole or exclusive basis for termination. This is in stark contrast to a case in which the parties included an exclusive and specific right to terminate for cause in a contract otherwise of indefinite duration. See, *e.g.*, *Lichnovsky v. Ziebart International Corp.*, 414 Mich. 228, 236, 324 N.W.2d 732, 737 (1982) ("[t]he inclusion in this agreement of a specific right to terminate for cause *** militates against a construction of the agreement that the licensor can terminate at will"). Second, the termination events are themselves instances of material breach, and *any* contract is terminable upon the occurrence of a material breach. See, *e.g.*, *Trient Partners I Ltd. v. Blockbuster Entertainment Corp.*, 83 F.3d 704, 709 (5th Cir. 1996) ("[a]n agreement which is otherwise indefinite in duration and terminable at will cannot be converted into an agreement of definite duration by the mere transcription of such universals within the text of the

contract") (applying Texas law). Where a contract is indefinite in duration, the delineation of instances of material breach in the context of a permissive and nonexclusive termination provision will not create a contract terminable for cause.

The rationale for such a construction is compelling in its sheer simplicity. Where parties have failed to agree on a contract's duration, the contract is construed as terminable at the will of either party because they have not agreed otherwise and it would be inappropriate for a court to step in and substitute its own judgment for the wisdom of the parties. This reflects two important public policies—one general, one specific. First, in general, individuals should be free to order their affairs subject to important qualifications for instances of fraud, duress, or undue influence. Second, perpetual contracts are disfavored. *Adkission v. Ozment*, 55 Ill. App. 3d 108, 112 (1977). "Forever" is a long time and few commercial concerns remain viable for even a decade. Advances in technology, changes in consumer taste and competition mean that once-profitable businesses perish—regularly. Today's fashion will tomorrow or the next day inevitably fall the way of the buggy whip, the eight-track tape and the leisure suit. Men and women of commerce know this intuitively and achieve the flexibility needed to respond to market demands by entering into agreements terminable at will.

Jespersen and 3M enjoyed a long and presumably profitable relationship of thirteen or more years. That one or the other now seeks to terminate that relationship consistent with the bargained-for contractual rights and common law should come as little surprise. These parties are sophisticated and we must presume they knew the law when they entered into this agreement. As we have already acknowledged, the rule that contracts of indefinite duration are terminable at will has long been fol-

lowed in Illinois (*Joliet Bottling*, 254 Ill. at 219; *Davis*, 208 Ill. at 385), and our courts have applied the rule in a variety of contexts including employment contracts (*Duldulao*, 115 Ill. 2d at 489), credit card agreements (*Garber v. Harris Trust & Savings Bank*, 104 Ill. App. 3d 675, 683 (1982)), money market fund accounts (*Langendorf v. Irving Trust Co.*, 244 Ill. App. 3d 70, 79 (1992)), and even sales contracts.[3] The parties here expressly drafted a contract that was to last "indefinitely," which our courts have always construed to mean terminable at will. Moreover, the contract expressly granted 3M the right to terminate Jespersen's license to use the Trim-Line trade name, that is to say, terminate the subject matter of the agreement. Finally, Jespersen enjoyed an express, unfettered right to terminate the agreement on proper notice. These facts further bolster our conclusion that the parties to this contract intended their agreement to be terminable at will.

In short, where the parties have drafted a contract that is otherwise indefinite in duration and terminable at will, the delineation of instances of material breach in the context of a permissive and nonexclusive termination provision will not alone create a contract terminable for cause. Both parties here enjoyed the right to terminate the agreement at will, which means they could terminate the agreement for any reason or no reason without committing a breach of contract. Accordingly, we affirm the judgments below dismissing the plaintiff's complaint for failure to state a cause of action for breach of contract.

*Affirmed.*

---

[3]Under section 2—309 of the Uniform Commercial Code (codified at 810 ILCS 5/2—309(2) (West 1994)), a contract which calls for successive performances but is indefinite in duration "may be terminated at any time by either party."

JUSTICE HARRISON, dissenting:

When construing a contract, the court's primary objective is to ascertain and give effect to the intention of the parties (see *Martin v. City of O'Fallon*, 283 Ill. App. 3d 830, 834 (1996)) as shown by the language used in the agreement (*In re Doyle*, 144 Ill. 2d 451, 468 (1991)). If the language of a contract does not address the agreement's duration or specify a cancellation event, the contract is normally construed as terminable at will. See, *e.g.*, *Bass v. Prime Cable of Chicago, Inc.*, 284 Ill. App. 3d 116, 126 (1996). The language of the contract in this case, however, does do those things. It specifically provides that the agreement shall continue in force indefinitely unless certain enumerated conditions occur.

Where, as here, a contract is terminable upon the occurrence of some event, it is not terminable at will. See *First Commodity Traders v. Heinhold Commodities*, 766 F.2d 1007, 1012 (7th Cir. 1985) (applying Illinois law). Although the contract before us uses the term "may" in describing Trim-Line's right to terminate and although it includes "breach of any term or condition of this agreement" as one of the terminating events, the same was true in *First Commodity Traders*, 766 F.2d at 1012, where the court specifically held that the contract was not terminable at will.

A different conclusion was reached in *Trient Partners I Ltd. v. Blockbuster Entertainment Corp.*, 83 F.3d 704, 709 (5th Cir. 1996), cited by the majority. That case, however, applied the law of Texas, not Illinois. If we are going to look to jurisdictions beyond Illinois, where the matter is being litigated, or California, whose law is specified in the contract itself, I do not understand why we should fix on Texas. The law of Texas is certainly no more persuasive than the law of New York, which joins Illinois in holding that the public policy against perpetual contractual commitments is inapplicable to contracts such as this one which provide for termination or cancel-

298

lation upon the occurrence of specified events. See *Payroll Express Corp. v. Aetna Casualty & Surety Co.*, 659 F.2d 285, 291-92 (2d Cir. 1981); C. Faruki, *The Defense of Terminated Dealer Litigation: A Survey of Legal and Strategic Considerations*, 46 Ohio St. L.J. 925, 998 n.8 (1985).

Flexibility is important to commerce, as the majority observes, but it is not so important that it justifies excusing parties from their valid contractual obligations. Under the terms of the contract here, Trim-Line does not have the right to terminate the agreement at will. The judgment of the appellate court affirming dismissal of Jespersen's complaint should therefore be reversed, and the cause should be remanded to the circuit court for further proceedings. I therefore dissent.

JUSTICE BILANDIC joins in this dissent.