# Illinois Official Reports

## Appellate Court

*Morningside North Apartments I, LLC v. 1000 N. LaSalle, LLC*,
2017 IL App (1st) 162274

| | |
|---|---|
| Appellate Court Caption | MORNINGSIDE NORTH APARTMENTS I, LLC, as Successor in Interest to Northwest Home for the Aged, Plaintiff-Appellee, v. 1000 N. LaSALLE, LLC, Defendant-Appellant. |
| District & No. | First District, Sixth Division<br>Docket No. 1-16-2274 |
| Filed | March 24, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 13-CH-16609; the Hon. Rodolfo Garcia, Judge, presiding. |
| Judgment | Affirmed in part and reversed in part; cause remanded. |
| Counsel on Appeal | David M. Rownd and Justin Newman, of Thompson Coburn LLP, of Chicago, for appellant.<br><br>Norman T. Finkel and Richard M. Goldwasser, of Schoenberg, Finkel, Newman & Rosenberg, LLC, of Chicago, for appellee. |
| Panel | PRESIDING JUSTICE HOFFMAN delivered the judgment of the court, with opinion.<br>Justices Rochford and Delort concurred in the judgment and opinion. |

¶ 1        The defendant, 1000 N. LaSalle, LLC, appeals from an order of the trial court that granted a summary judgment in favor of the plaintiff, Morningside North Apartments I, LLC, on the plaintiff's complaint for declaratory judgment and denied its cross-motion for summary judgment. For the reasons that follow, we reverse the summary judgment entered in favor of the plaintiff, affirm the denial of the defendant's motion for summary judgment, and remand the matter for further proceedings.

¶ 2        Emerging from the pleadings and evidentiary material of record is the following factual scenario, which is essentially uncontradicted. The plaintiff is the owner of the property commonly known as 170 West Oak Street, Chicago, Illinois (hereinafter referred to as the Morningside Property), which includes a parking lot with 69 parking spaces. The plaintiff acquired its interest in the Morningside Property by warranty deed from the Northwest Home for the Aged (Northwest). The defendant is the owner of the property commonly known as 1000 North LaSalle Street, Chicago, Illinois (hereinafter referred to as the 1000 North Property), which it acquired from Capital Associates Development Corporation (Capital). The Morningside property is located immediately adjacent to the 1000 North Property.

¶ 3        On March 18, 1998, Northwest, the then owner of the Morningside Property, and Capital, the then owner of the 1000 North Property, entered into a license agreement (the 1998 Agreement) covering a portion of the Morningside Property (hereinafter referred to as the License Parcel). By the terms of the 1998 Agreement, the License Parcel is "commonly referred to as parking spaces numbers 50-69 for parking, ingress and egress by motor vehicle and pedestrian traffic to and from Parcel No. 2 [1000 North Property]." The 20 parking spaces located within the License Parcel abut the western property line of the 1000 North Property.

¶ 4        Capital assigned its interest under the 1998 Agreement to the defendant on June 30, 1998, when it transferred title to the 1000 North Property. Since that time, the defendant has rented the 20 parking spaces included in the License Parcel to the residents of the 1000 North LaSalle Apartments, which is located on the 1000 North Property. When the plaintiff acquired the Morningside Property from Northwest on January 16, 2013, it became the successor-in-interest to Northwest in the 1998 Agreement. Thereafter, the plaintiff demanded that the defendant cease renting the 20 parking spaces included in the License Parcel, but the defendant refused.

¶ 5        The plaintiff instituted the instant action, seeking a declaration that the 1998 Agreement is void for lack of consideration or, in the alternative, a declaration that the 1998 Agreement conveyed only a nonexclusive license to use the 20 parking spaces. The defendant answered the complaint, asserting that the 1998 Agreement is supported by consideration, and granted to its predecessor-in-interest an exclusive license to use the 20 parking spaces.

¶ 6        The defendant filed a motion for summary judgment pursuant to section 2-1005(b) of the Code of Civil Procedure (Code) (735 ILCS 5/2-1005(b) (West 2014)), seeking a declaration that the 1998 Agreement is valid and enforceable and that, under the terms of the contract, it has the exclusive right to direct the use of the 20 parking spaces located in the License Parcel. The plaintiff filed a "Motion for Summary Determination" pursuant to section 2-1005(d) of the Code (735 ILCS 5/2-1005(d) (West 2014)), seeking a summary determination "declaring that, to the extent the *** [1998 Agreement] is valid, the defendant has only non-exclusive use of the [20] parking spaces under the *** [1998 Agreement] and cannot exclude the plaintiff or its

invitees from using those parking spaces." In response to the defendant's motion for summary judgment, the plaintiff reasserted its argument that the 1998 Agreement is void for lack of consideration.

¶ 7 The parties agreed, and the trial court concurred, that there are no genuine issues of material fact in dispute, and therefore, the matter should be resolved by summary judgment. After consideration of the parties' motions and supporting memorandums, and following the arguments of their respective counsel, the trial court entered an order (1) granting the plaintiff's "motion for summary determination," finding that the 1998 Agreement conveyed a nonexclusive license over the 20 parking spaces located in the License Parcel, and (2) denying the defendant's motion for summary judgment. In addition, the order states that the plaintiff sought no further relief, and the parties agreed that the order terminated the litigation. This appeal followed.

¶ 8 Before addressing the defendant's assignment of error, we comment briefly on the procedural posture of this case and the effect of the trial court's order granting the plaintiff's motion. As noted earlier, the plaintiff filed a motion for a summary determination pursuant to section 2-1005(d) of the Code. However, an examination of the plaintiff's motion and the relief sought therein reveals that the motion was in reality a motion for summary judgment pursuant to section 2-1005(a) of the Code (735 ILCS 5/2-1005(a) (West 2014)). Section 2-1005(d) of the Code authorizes the court, if it determines that:

> "there is no genuine issue of material fact as to one or more of the major issues in the case, but that substantial controversy exists with respect to other major issues, *** [to] draw an order specifying the major issue or issues that appear without substantial controversy, and directing such further proceedings upon the remaining undetermined issues as are just." 735 ILCS 5/2-1005(d) (West 2014).

By its very nature, any order entered pursuant to section 2-1005(d) is interlocutory, providing only that the facts specified in the order "shall be deemed established, and the trial shall be conducted accordingly." *Id*. In contrast, a motion brought pursuant to section 2-1005(a) seeks a summary judgment in favor of a plaintiff for all or any part of the relief sought in its complaint. 735 ILCS 5/2-1005(a) (West 2014). The relief available under these two subsections affects the appealability of any order which the trial court may enter. An order entered pursuant to section 2-1005(a) may well be a final order, appealable under Illinois Supreme Court Rules 301 (eff. Feb. 1, 1994) and 303 (eff. Jan. 1, 2015) or Rule 304(a) (eff. Mar. 8, 2016). An order entered pursuant to section 2-1005(d), however, is not a final order as it does not dispose of a claim. Such an order is interlocutory and, therefore, not appealable. In this case, however, it is clear that, regardless of how the plaintiff labeled its motion, the trial court granted the plaintiff all of the relief that it requested in its complaint: a summary judgment, not a summary determination. The trial court's order disposed of the instant case in its entirety. It is, therefore, a final order, giving rise to our jurisdiction under Illinois Supreme Court Rules 301 and 303; not under Illinois Supreme Court Rule 304(a) as suggested by the plaintiff.

¶ 9 By this appeal, the defendant seeks both a reversal of the summary judgment entered in favor of the plaintiff and a reversal of the trial court's denial of its motion for summary judgment. We, therefore, conduct a *de novo* review. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992).

¶ 10 Summary judgment is proper where the pleadings, depositions, admissions, and affidavits on file reveal that there is no genuine issue of material fact and the moving party is entitled to

judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2014); *Thompson v. Gordon*, 241 Ill. 2d 428, 438 (2011). Our function is to determine whether the trial court correctly found that no genuine issue of material fact existed and whether it correctly entered summary judgment in favor of the plaintiff and denied the defendant's cross-motion for summary judgment. *Fitzwilliam v. 1220 Iroquois Venture*, 233 Ill. App. 3d 221, 237 (1992). It is the trial court's judgment and not its reasoning that is on appeal. *Material Service Corp. v. Department of Revenue*, 98 Ill. 2d 382, 387 (1983).

¶ 11    When, as in this case, parties file cross-motions for summary judgment, they agree that only a question of law is involved and invite the court to decide the issues based on the record. *Allen v. Meyer*, 14 Ill. 2d 284, 292 (1958). However, the filing of cross-motions for summary judgment does not establish that there is no genuine issue of material fact, or obligate a court to render summary judgment. *Pielet v. Pielet*, 2012 IL 112064, ¶ 28.

¶ 12    The defendant argues that the trial court erred in granting summary judgment in favor of the plaintiff and denying its cross-motion for summary judgment, asserting that, pursuant to the terms of the 1998 Agreement, it has the exclusive right to direct the use of the 20 parking spaces located in the License Parcel. The plaintiff argues that the trial court correctly found that the 1998 Agreement only conveyed a nonexclusive license over the 20 parking spaces located in the License Parcel. In its brief before this court, the plaintiff has made no argument addressed to the enforceability of the 1998 Agreement. Consequently, the issue before us is one of contract interpretation.

¶ 13    The 1998 Agreement contains the following provisions which are relevant to this litigation:

"C. Owner [the plaintiff's predecessor-in-interest, Northwest] wishes to grant, and Licensee [the defendant's predecessor in interest, Capital] wishes to receive, a nonexclusive license to utilize a certain portion of Parcel No. 1 [the Morningside Property] to provide such access, all as more fully set forth below.
***
1. Grant of License. Owner hereby grants to Licensee and its successors, assigns, grantees and invitees, a non-exclusive license to utilize that portion of Parcel No. 1 described on Exhibit C attached hereto and by this reference made part hereof (hereinafter referred to as the "Premises") [the License Parcel] and commonly referred to as parking spaces numbers 50-69 for parking, ingress and egress by motor vehicle and pedestrian traffic to and from Parcel No. 2 [1000 North Property]. The parking spaces shall be used at the sole and exclusive direction of Licensee.
***
3. Maintenance Costs. Licensee shall during the term of this license, contribute to Owner an annual sum as a reimbursement for the costs of operation, maintenance and rehabilitation of the parking facilities, calculated on the basis of the ratio which the spaces utilized by licensee bears to the aggregate number of spaces comprising the Parcel No. 1 facility. A statement of these costs shall be furnished to the licensee annually.
***
5. Reservation of Right By Owner. The right to use the Premises, and the right of ingress and egress over the Premises, is expressly reserved by the Owner, its

- 4 -

successors, grantees, invitees and assigns. In addition, and not by limitation but by way of example, Owner, its successors, grantees, invitees arid [*sic*] assigns, reserve the right from time to time to grant additional ingress, egress and utility licenses and easements over, upon and under Parcel No. 1 or the Premises, provided that such licenses or easements do not interfere with Licensee's use of the Premises pursuant to the terms hereof."

¶ 14 Relying upon the last sentence in paragraph C(1) of the 1998 Agreement, the defendant argues that its predecessor-in-interest was unambiguously granted the exclusive right to use the 20 parking spaces contained in the License Parcel. The plaintiff relies upon the terms "nonexclusive license" in paragraph C of the 1998 Agreement, the term and "non-exclusive license" in paragraph C(1), and the reservation of rights contained in paragraph C(5)in support of its argument that the defendant has only a nonexclusive right to use the 20 parking spaces.

¶ 15 The rules of contract interpretation are well settled. In construing a contract, a court's primary objective is to give effect to the intention of the parties. *Gallagher v. Lenart*, 226 Ill. 2d 208, 232 (2007). We look first to the language of the contract to determine the parties' intent. *Id.* at 233. We construe the contract as a whole, viewing each provision in light of the other provisions. *Id.* We do not construe a contract by viewing a clause or provision in isolation. *Id.* If the language of the contract is facially unambiguous, we interpreted both its meaning and the intent of the parties as a matter of law, solely from the contract itself, without resorting to extrinsic evidence. *Farm Credit Bank of St. Louis v. Whitlock*, 144 Ill. 2d 440, 447 (1991). However, if the language of the contract is reasonably susceptible to more than one meaning, it is ambiguous. *Gallagher*, 226 Ill. 2d at 233. However, a contract is not rendered ambiguous merely because the parties disagree on its meaning. *Thompson*, 241 Ill. 2d at 443. Whether the language of a contract is ambiguous as to the parties' intent is a question of law. *Quake Construction, Inc. v. American Airlines, Inc.*, 141 Ill. 2d 281, 288 (1990).

¶ 16 Our examination of the 1998 Agreement leads us to conclude that the contract is ambiguous as to the issue of whether use of the 20 parking spaces was intended to be exclusive or nonexclusive. Neither the interpretation placed upon the contract by the plaintiff nor the defendant's interpretation is facially unambiguous. In order to construe the 1998 Agreement as having granted only a nonexclusive right to use the 20 parking spaces located in the License Parcel as suggested by the plaintiff, we would be required to find that the last sentence in paragraph C(1), which provides that the parking spaces shall be used at the sole and exclusive direction of the licensee, is meaningless. To the same extent, adopting the construction suggested by the defendant would require us to ignore the nonexclusive language contained in paragraph C(1) and the provision in paragraph C(5)that reserved to the owner of the Morningside Property the right to use the License Parcel. We will not adopt, as a matter of law, any interpretation of a contract which would nullify or render any of its provisions meaningless. *Thompson*, 241 Ill. 2d at 442.

¶ 17 The plaintiff argues that, "to the extent ambiguity exists in a contract, the language is construed against the drafter," which in this case was the defendant's predecessor-in-interest. The rule is one of construction. However, rules of construction are employed only in the interpretation of ambiguous contracts. *State Farm Fire & Casualty Co. v. Watts Regulator Co.*, 2016 IL App (2d) 160275, ¶ 27.

¶ 18 "The purpose of summary judgment is to determine whether a genuine issue of material fact exists, not to try a question of fact." *Thompson*, 241 Ill. 2d at 438. If the language of a

contract is ambiguous regarding the parties' intent, interpretation of the contract is a question of fact that cannot be resolved by a summary judgment. See *Quake Construction*, 141 Ill. 2d at 288-89.

¶ 19    Based upon the foregoing analysis, we reverse the summary judgment entered by the trial court in favor of the plaintiff and affirm the denial of the defendant's motion for summary judgment. We remand the matter back to the trial court for further proceedings consistent with the opinions expressed herein.

¶ 20    Affirmed in part and reversed in part; cause remanded.