2022 IL App (1st) 201103-U

No. 1-20-1103

Order filed February 25, 2022

Sixth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | |
|---|---|
| APOLLO THEATER CHICAGO, LLC, | ) |
| | ) Appeal from the |
| Plaintiff-Appellant, | ) Circuit Court of |
| | ) Cook County. |
| v. | ) |
| | ) No. 19 CH 07808 |
| BAKER LINCOLN, LLC, NCB DEVELOPMENT XI, | ) |
| LLC, and USEF ELEVATE LLC, | ) The Honorable |
| | ) David B. Atkins, |
| Defendants-Appellees. | ) Judge, Presiding. |

JUSTICE ODEN JOHNSON delivered the judgment of the court.
Justice Mikva concurred in the judgment.
Presiding Justice Pierce dissented.

**ORDER**

¶ 1    *Held*:   We reverse where the circuit court's determination that the letter agreement was of indeterminate duration and thus terminable at will and void as against public policy was error where the letter agreement included a specified termination event; circuit court's determination that it was commercially unreasonable for defendants to continue their performance under the letter agreement was error when the plain language of the letter agreement required the use of commercially reasonable efforts to renew the parking agreement.

¶ 2    Plaintiff Apollo Theater Chicago, LLC (Apollo Theater) appeals orders of the circuit court of Cook County which dismissed its complaint against defendants Baker Lincoln, LLC (Baker Lincoln), NCB Development XI, LLC (NCB) and USEF Elevate LLC (USEF) (collectively defendants) on February 25, 2020, and denied its motion for reconsideration on September 16, 2020. On appeal, plaintiff contends that the circuit court erred in dismissing its complaint where: (1) the circuit court incorrectly construed the letter agreement as a contract of indeterminate duration that allowed defendants to terminate it at any time and (2) the letter agreement was not at will because it contained a specified event of termination. For the following reasons, we reverse.

¶ 3                                    BACKGROUND

¶ 4    The following background information is taken from plaintiff's three-count complaint for declaratory and other relief filed in the circuit court of Cook County on June 27, 2019.

¶ 5    Plaintiff is an Illinois limited liability company with its principal offices in Chicago, Illinois. Defendants Baker Lincoln and USEF are also Illinois limited liability companies with their principal offices in Chicago, Illinois. NCB is a former Illinois limited liability company which had its principal office in Chicago, Illinois. NCB was involuntarily dissolved by the Illinois Secretary of State on May 8, 2015.

¶ 6    NCB was managed by Baker Lincoln, which was managed by the Baker Organization, whose president and secretary was Warren Baker. USEF was managed by Baker Lincoln HRD, LLC, which was managed by Baker Development Corporation, whose president and secretary was also Warren Baker.

¶ 7    The Apollo Theater building, located in Chicago, was leased by Rob Kolson through his corporation Rob Kolson Creative Productions, Inc. ("Kolson Creative") from 1996 to 2012. The then

owner of the Apollo Theater building also owned the adjoining property. The owner leased a parking lot that was located behind both properties directly from the Chicago Transit Authority (CTA) for use by the adjoining property. Because the Apollo Theater building had no on-site parking, Kolson Creative subleased the CTA parking lot from the owner on a shared-use basis.

¶ 8    In 2011 both the Apollo Theater building and the adjoining property were sold in foreclosure proceedings to NCB. NCB assumed the lease for the Apollo Theater and continued to honor the CTA parking sublease as part of the property lease. In September 2012, Baker Lincoln, on behalf of NCB, entered into a new Under El Monthly Vehicle Parking License Agreement (CTA agreement) with CTA. Pursuant to the CTA agreement, Baker Lincoln agreed to pay CPS[1] a monthly fee of $2025 for the exclusive use of the parking spaces located below the CTA tracks behind the Apollo Theater building and the adjoining property. In December 2012, Kolson agreed to purchase the Apollo Theater building. As a condition of the purchase, Kolson and NCB agreed that NCB would continue the CTA agreement and that they would share the costs with NCB paying 75% of the costs and plaintiff (Kolson's new entity) paying 25% of the costs.

¶ 9    As part of the sale, NCB executed and recorded a document titled "Declaration of Reciprocal Easements, Covenants, Conditions and Restrictions" in the chain of title for the Apollo Theater building and the adjoining property. The declaration included NCB's obligation to use "commercially reasonable efforts" to renew the CTA agreement 60 days prior to the expiration of the CTA parking license.

---

[1] Central Parking Systems (CPS) was the CTA's agent for purposes of the parking license agreement.

¶ 10    After the sale of the theater building to plaintiff, NCB began plans to demolish the building on the adjoining property and ultimately built an 11-story commercial and residential complex. In 2016, NCB transferred ownership of the complex to USEF, which was also managed by a Baker entity. According to plaintiff, Baker specifically promised Kolson that Baker Lincoln would agree to assume the obligation to renew the CTA agreement going forward, if plaintiff agreed to remove the recorded declaration from the chain of title for the theater building and the adjoining property. The parties subsequently executed a letter agreement dated July 25, 2016, in which Baker Lincoln agreed to use "commercially reasonable efforts" to renew the CTA agreement at the end of each term. The letter agreement also stated that "at such time, if ever, [Baker Lincoln] is unable to renew the CTA agreement, [it] shall notify Apollo ***." After execution of the letter agreement, plaintiff executed an omnibus agreement, presented by Baker, that released all obligations of USEF under the previously recorded declaration related to the parking license obligation. The omnibus agreement was then recorded.

¶ 11    In 2018 Baker Lincoln missed some of the monthly parking payments to the CTA, although plaintiff paid its 25% portion, which resulted in the CTA's threat to terminate the parking license. Baker Lincoln resumed payments, but again stopped making payments in 2019. When plaintiff contacted Baker to "demand" that Baker Lincoln honor its obligation to renew the parking license agreement, Baker indicated that he never intended for Baker Lincoln to continue renewing the CTA agreement, stating that "we simply don't believe we have an obligation for paying $18,000 a year into perpetuity for a parking lot we don't need or use."

¶ 12    Due to Baker Lincoln's failure to make the required payments, on March 12, 2019, the CTA declared Baker Lincoln in default and began towing vehicles parked behind the Apollo

Theater building, which belonged to plaintiff's employees and licensees. Additionally, the CTA advised Baker Lincoln that it would terminate the parking license agreement if Baker Lincoln failed to keep the account current. Warren Baker advised the CTA to terminate the agreement.

¶ 13    Following Baker Lincoln's termination of the CTA agreement, plaintiff negotiated directly with the CTA for a direct parking license agreement to provide parking for its patrons and employees. The monthly rate was the same as under the 2012 CTA agreement and plaintiff also bore the full maintenance costs for the lot.

¶ 14    Plaintiff's three-count complaint alleged breach of contract in count I, sought a declaratory judgment in count II, and sought recission of both the letter agreement and the omnibus agreement in alternative count III.

¶ 15    In count I, plaintiff alleged that it performed all required obligations under the letter agreement while Baker Lincoln breached its obligations by failing to make the required payments to the CTA and unilaterally terminating the CTA agreement. Plaintiff alleged that it incurred damages in the form of the increased cost of the parking license and the reimbursement of tow expenses to its employees and licensees. Count II sought a declaration by the circuit court of its rights to compel defendants to pay for parking until such time as the CTA was unwilling to renew the CTA agreement on reasonable terms. As an alternative, count III alleged that plaintiff only signed the omnibus agreement because Baker promised that Baker Lincoln would continue to renew the CTA agreement and provide plaintiff with parking as long as the CTA was willing to renew the agreement on commercially reasonable terms. Plaintiff alleged that Baker's false promise was a "scheme employed to accomplish the fraud," namely, inducing plaintiff to sign the omnibus agreement and release USEF from its obligation to maintain the CTA parking spaces for

plaintiff's benefit. Essentially, plaintiff sought the restoration of the parties to the status quo through the continued application of the recorded declaration.

¶ 16    On September 30, 2019, in response to plaintiff's complaint, Baker Lincoln and NCB each filed motions to dismiss under section 2-619.1 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619.1 (West 2018)). On October 1, 2019, USEF filed a section 2-615 (735 ILCS 5/2-615 (West 2018)) motion to dismiss.

¶ 17    In their section 2-619.1 motions to dismiss, Baker Lincoln and NCB both acknowledged that the parking license letter agreement contained substantially the same terms as the NCB purchase and sale agreement and the recorded declaration regarding the CTA agreement and the shared use of the CTA parking. However, they argued that the renewal provision of the independent letter agreement was void as against Illinois public policy and that the agreement was terminable at the will of the parties because the agreement entailed a duty on Baker Lincoln to renew the agreement indefinitely. Defendants asserted that the agreement amounted to a contract of indefinite duration and could be terminated at any time, and further that the termination was not actionable. They further argued that the obligation to renew the CTA parking license was a "vague and ambiguous event" and that "commercially reasonable" meant that they only needed to renew the parking license agreement for a commercially reasonable period of time.

¶ 18    USEF argued in its section 2-615 motion to dismiss that count III of plaintiff's complaint failed to state a claim for rescission based on promissory fraud because it did not plead all elements of common law fraud or a fraudulent scheme or device. Additionally, USEF asserted that plaintiff failed to allege facts from which fraud was the necessary or probable inference and further that count III did not allege that the parties could be restored to the status quo ante. USEF also argued

that the letter agreement stated that Baker Lincoln must use commercially reasonable efforts to renew the parking license at the end of each term.

¶ 19    In a combined response to defendants' motions to dismiss, plaintiff maintained that all counts of its complaint were viable because defendants' obligation to provide access to the CTA parking lot was enforceable. Specifically, plaintiff argued that the parking agreements had a specific termination event by the CTA and was not terminable at will; defendants' contrary construction of the "commercially reasonable" language in the agreement created an issue of fact that could not be resolved on a motion to dismiss; count II stated a claim for declaratory judgment because plaintiff sought forward-looking relief; and count III stated a claim for rescission of the omnibus agreement based on promissory fraud.

¶ 20    A hearing was scheduled on the motions to dismiss for February 20, 2020. In a written order entered on February 25, 2020, the circuit court made the following findings: (1) the 2016 letter agreement was a contract of indefinite duration and was terminable at will as a matter of law as contrary to public policy; (2) plaintiff's proposed condition that the letter agreement terminated upon the occurrence of a specified event, namely when the CTA was not willing to renew the lease, was not found  in the letter agreement, it  instead only imposed an obligation to use commercially reasonable efforts; and (3) because the letter agreement was terminable at will and therefore unenforceable as a matter of law, counts II and III failed. Plaintiff's complaint was then dismissed in its entirety with prejudice against all three defendants. A hearing was scheduled on the motions to dismiss for February 20, 2020. In a written order entered on February 25, 2020, the circuit court made the following findings: (1) the 2016 letter agreement was a contract of indefinite duration and was terminable at will as a matter of law as contrary to public policy; (2) plaintiff's proposed

condition that the letter agreement terminated upon the occurrence of a specified event, namely when the CTA was not willing to renew the lease, was not found in the letter agreement, it instead only imposed an obligation to use commercially reasonable efforts; and (3) because the letter agreement was terminable at will and therefore unenforceable as a matter of law, counts II and III failed. Plaintiff's complaint was then dismissed in its entirety with prejudice against all three defendants.

¶ 21    Plaintiff filed a motion to reconsider on March 25, 2020, on the basis that the circuit court erred in its application of the law by granting defendants' motions to dismiss and dismissing the case with prejudice. In a written order, the circuit court denied plaintiff's motion, finding that it made many of the same arguments it previously made in response to defendants' dismissal motions including its reliance on a federal case that was previously found inapplicable. The circuit court noted that it previously did not sufficiently analyze the term "commercial reasonable efforts." In reconsideration, the circuit court analyzed the term and found that according to case law the application of the term was very fact-dependent. The circuit court opined that it was "difficult to see how a dormant limited liability company like Baker Lincoln could be found to have acted in a commercially unreasonable manner when it decided not to renew its lease of a parking lot that it no longer used[d] or need[ed]." The circuit court further found that plaintiff failed to provide any evidence for how Baker Lincoln's actions were irresponsible Based thereon, plaintiff's motion to reconsider was denied and this timely appeal followed.

¶ 22                                    ANALYSIS

¶ 23    On appeal, plaintiff contends that the circuit court erred in granting defendants' motions to dismiss and denying its motion to reconsider where: (1) the circuit court incorrectly construed the

letter agreement to allow defendants to terminate the parking license whenever it no longer needed it and (2) the letter agreement was not at will because the prospect that defendants would be unable to renew the CTA parking license despite reasonable commercial efforts is a specified event of termination under our supreme court's decision in *Jespersen v. Minnesota, Mining and Manufacturing Company*, 183 Ill. 2d 290 (1998). Both issues involve the timing of when defendants could terminate the parking license and require us to construe the contract.

¶ 24                    A. Standard of Review – Motions to Dismiss

¶ 25    The record indicates that all three defendants filed motions to dismiss plaintiff's complaint: Baker Lincoln and NCB filed section 2-619.1 (735 ILCS 5/2-619.1 (West 2018)) motions to dismiss and USEF filed a section 2.615 (735 ILCS 5/2-615 (West 2018)) motion to dismiss. Section 2-619.1 provides that section 2-615 and section 2-619 motions may be filed together as a single motion, but such combined motion shall be divided into parts that are limited to and specify the single section of the Code under which the relief is sought. *Tielke v. Auto Owners Insurance Company*, 2019 IL App (1st) 181756, ¶ 23. A motion to dismiss under section 2-615 attacks the sufficiency of the complaint and raises the question of whether the complaint states a claim upon which relief can be granted. *Id.* ¶ 22. A section 2-619 motion to dismiss admits the legal sufficiency of plaintiff's complaint but raises defects, defenses or other affirmative matters that appear on the face of the complaint or that are established by external submissions that defeat the complaints allegations. *Id.* In reviewing the sufficiency of a complaint, we accept as true all well-pleaded facts and all reasonable inferences that may be drawn from those facts. *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 429 (2006). When ruling on a motion to dismiss under either section, the circuit court should construe the pleadings and supporting documents in the light most favorable to the

nonmoving party. *Masters v. Murphy*, 2020 IL App (1st) 190908, ¶ 9. We review dismissals pursuant to sections 2-615, 2-619, and 2-619.1 *de novo*. *Id.* We also construe the allegations in the complaint in the light most favorable to the plaintiff. *Id.* We can affirm the circuit court's decision on a motion to dismiss on any ground in the record, and our disposition is without regard to the circuit court's reasoning. *Id.* With these general concepts in mind, we turn to the merits of this appeal.

¶ 26                           B. Construction of the Parking Lot License

¶ 27                            1. Contract Construction in General

¶ 28     Count I of plaintiff's complaint alleged breach of contract, which is the crux of the issues raised on this appeal. The essential elements of a breach of contract are as follows: (1) the existence of a valid and enforceable contract, (2) performance by the plaintiff, (3) breach of the contract by the defendant, and (4) resulting injury to the plaintiff. *Coghlan v. Beck*, 2013 IL App (1st) 120891, ¶ 27. In order to determine whether plaintiff's complaint was properly dismissed, we must interpret the letter agreement between the parties related to the parking license.

¶ 29     The rules of contract interpretation are well settled. In construing a contract, a court's primary objective is to give effect to the intention of the parties. *Morningside North Apartments I, LLC v. 1000 N. LaSalle, LLC*, 2017 IL App (1st) 162274, ¶ 15. We look first to the language of the contract to determine the parties' intent. *Id.* We construe the contract as a whole, viewing each provision in light of the other provisions. *Id.* We do not construe a contract by viewing a clause or provision in isolation. *Id.* If the language of the contract is facially unambiguous, we interpret both its meaning and the intent of the parties as a matter of law, solely from the contract itself, without resorting to extrinsic evidence. *Id.* Where the language of the contract is reasonably susceptible to

more than one meaning, it is ambiguous. *Id.* However, a contract is not made ambiguous just because the parties disagree on its meaning. *Id.*

¶ 30    Ambiguous terms in a contract are construed strictly against the drafter. *Smith v. Allstate Insurance Company*, 312 Ill. App. 3d 246, 254 (1999); *Coghlan*, 2013 IL App (1st) 120891, ¶ 27. The Restatement (Second) of Contracts explains the general rule that ambiguous contract language is to be construed against the drafter as follows:

> "Where one party chooses the terms of a contract, he is * * * more likely than the other party to have reason to know of uncertainties of meaning. Indeed, he may deliberately obscure, intending to decide at a later date what meaning to assert. In cases of doubt, therefore, so long as other factors are not decisive, there is substantial reason for preferring the meaning of the other party. The rule is often invoked in cases of standardized contracts and in cases where the drafting party has the stronger bargaining position * * *." Restatement (Second) of Contracts §206, comment *a* (1981).

¶ 31    If the court determines that the contract is ambiguous, parol evidence may be considered by the trier of fact in determining the parties' intent. *Meyer v. Marilyn Miglin, Inc.*, 273 Ill. App. 3d 882, 888 (1995). A contract is binding and enforceable only if its material terms are definite and certain. *Id.* at 888-89. Whether the language of a contract is ambiguous as to the parties' intent is a question of law. *Morningside North Apartments I*, 2017 IL App (1st) 162275, ¶ 15.

¶ 32                              2. Duration of the Parking License

¶ 33    In the case at bar, plaintiff first contends that the circuit court erred in finding that defendants could terminate the parking license when it no longer benefitted them because the 2016 letter agreement was an indeterminate contract and void as a matter of law. Plaintiff maintains that

the letter agreement was not an indeterminate contract as it contained a specified event of termination under our supreme court's decision in *Jespersen*, 183 Ill. 2d 290 (1998).

¶ 34    We disagree with the trial court's finding. While it is true that a contract containing no provision for its duration is ordinarily terminable at will (*Jespersen*, 183 Ill. 2d at 293), such is not the case when a period of duration can fairly be implied from the nature of the contract (*Matter of Estate of Walls*, 276 Ill. App. 3d 1053, 1058 (1995)). The duration of the agreement must be determined from a consideration of the agreement as a whole. *Estate of* Walls, 276 Ill. App. 3d at 1058. As our supreme court stated in *Jespersen*, "an agreement without a fixed duration but which provides that it is terminable *only* for cause or upon the occurrence of a specific event is in one sense of indefinite duration, but is nonetheless terminable only upon the occurrence of the specified event and not at will." *Jespersen*, 183 Ill. 2d at 293 (where the contract was to continue in force indefinitely unless terminated as specified by a specific event found in another section of the contract).

¶ 35    Here, the letter agreement specified that Baker Lincoln use commercially reasonable efforts to renew the CTA agreement at the end of each term.[2] As noted above, the letter agreement further stated that "at such time, if ever, [Baker Lincoln] is unable to renew the CTA agreement, [it] shall notify Apollo ***." Based on a plain reading of the letter agreement, we find that it contained a specified termination event as defined in *Jespersen*, namely the inability of Baker Lincoln to renew the CTA parking agreement despite using commercially reasonable efforts. Thus,

---

[2] The word "term" was not defined in the letter agreement, but the letter agreement referenced the 2012 CTA agreement. The parties agreed at oral arguments held on December 9, 2021, had a month-to-month term.

the circuit court's determination that it was an indeterminate contract and terminable at will was in error.

¶ 36 Support for this position is found in other Illinois cases interpreting similar contract provisions, which articulate cognizable events upon which termination may occur, and finding that such contracts are not perpetual and terminable at will and will be upheld even in the absence of a specified termination event. *Cress v. Recreation Services, Inc.*, 341 Ill. App. 3d 149, 171 (2003). See also *Donahue v. Rockford Showcase & Fixture* Co., 87 Ill. App. 3d 47, 54 (1967); *Dawson v. W. & H. Voortman, Ltd.*, 853 F. Supp. 1038, 1042 (N.D.Ill. 1994).

¶ 37 Additionally, when no definite time is fixed, a contract may be construed to continue until some happening of a specific event, if that appears to be the intent of the parties. *Ricke v. Ricke*, 83 Ill. App. 3d 1115-1120 (1980); *Stein v. Isse Koch & Co.*, 350 Ill. App. 171, 176 (1953) (duration premised on a specific occurrence or event is sufficient to fix the term of the contract). Here, in construing the letter agreement, it is the intent of the parties that prevails and that is best served by looking to the plain language of the agreement. This court has found that contracts that required termination only by "mutual assent" were perpetual and terminable at will. See *Rico Industries, Inc. v. TLC Group, Inc.*, 2014 IL App (1st) 131522, ¶ 31. However, in contrast, the letter agreement in this case clearly states that it is to continue until Baker Lincoln is unable to renew the lease by using commercially reasonable efforts. It is not for this court to decide whether the parties entered into a balanced deal. Nor are parties to a contract each other's fiduciaries. See *Original Great American Chocolate Chip Cookie Co. v. River Valley Cookies, Ltd.*, 970 F.2d 273, 280 (7th Cir. 1992). Further, if Baker Lincoln wanted different terms in the agreement, it was certainly in a position to renegotiate once the covenant with the land was removed. The dissent conflates a one-

sided termination event with the lack of a termination event. Parties are free to choose the structure of their agreements as well as to choose their own termination events. Disagreement with the parties' chosen termination event does not equate to the lack of a termination event and therefore even the one-sided termination clause will be upheld.

¶ 38                                    3. Commercially Reasonable Efforts

¶ 39     On plaintiff's motion to reconsider, the circuit court additionally found that according to relevant caselaw "commercial reasonableness" was very fact-dependent and commented that it was "difficult to see how a dormant limited liability company like Baker Lincoln could be found to have acted in a commercially unreasonable manner when it decided not to renew its lease of a parking lot it no longer used[d] or need[ed]." The circuit court used this reasoning as an additional basis to dismiss plaintiff's complaint. We disagree, for the reasons set forth below.

¶ 40     The purpose of a motion to reconsider is to bring to the circuit court's attention a change in the law, an error in its previous application of existing law, or newly discovered evidence that was not available at the time of the prior hearing or decision. *Horlacher v. Cohen*, 2017 IL App (1st) 162712, ¶ 79. When reviewing a motion to reconsider that is based on a circuit court's purported misapplication of existing law, our standard of review is *de novo*. *Id*.

¶ 41     As we have already determined that the letter agreement was terminable only upon the occurrence of a specified termination event, namely the requirement that Baker Lincoln use commercially reasonable efforts to renew the lease at the end of each term, we must determine whether Baker Lincoln used commercially reasonable efforts to renew the parking license agreement at the end of the applicable term before termination.

¶ 42    The 2016 letter agreement did not define the term "commercially reasonable efforts." As noted previously, under Illinois law, a contract term is not ambiguous because it is undefined in the contract or because the parties disagree on its meaning. *Hunt v. Farmers Insurance Exchange*, 357 Ill. App. 3d 1076, 1078 (2005). Our supreme court, relying on a definition provided by a California appellate court, has stated that the term "commercial reasonableness" includes "commonly accepted commercial practices of responsible businesses which afford all parties fair treatment." *General Motors Corp. v. State Motor Vehicle Review Board*, 224 Ill. 2d 1, 16 (2007) (citing *Gifford v. J & A Holdings*, 54 Cal. App. 4th 996, 1005-06 (1997)).

¶ 43    In Illinois, a covenant of good faith and fair dealing is implied in every contract absent express disavowal. *Dayan v. McDonald's Corp.*, 125 Ill. App. 3d 972, 989-90 (1984). Problems relating to good faith performance typically arise when one party to the contract is given broad discretion in performance. *Id.* at 990. The dependent party must then rely on the party in control to exercise that discretion fairly. *Id.* This principle is demonstrated in cases examining the duty of a contracting party to use reasonable efforts to bring about a condition precedent. *Id.* See *Osten v. Shah*, 104 Ill. App. 3d 784 (1982); *Central National Bank v. Fleetwood Realty Corp.*, 110 Ill. App. 3d 169 (1982); *Pierce v. MacNeal Memorial Hospital Association*, 46 Ill. App. 3d 42 (1977); *Dasenbrock v. Interstate Restaurant Corp.*, 7 Ill. App. 3d 295 (1972). In each of those cases, the contractual obligation of one party was contingent upon a condition peculiarly within the power of that party, such as obtaining mortgage financing or obtaining necessary licenses or permits. *Dayan*, 125 Ill. App. 3d at 990. Thus, the controlling party could have avoided incurring any contractual obligation by refusing to bring about the relevant condition. *Id.* In each case, the court

held that the controlling party's discretion was limited by the implied covenant of good faith and therefore the party was obligated to use reasonable efforts to bring about that condition. *Id.*

¶ 44    The doctrine of good faith performance imposes a limitation on the exercise of discretion vested in one of the parties to a contract. *Id.* at 990-91. In describing nature of that limitation, Illinois courts have held that a party vested with contractual discretion must exercise that discretion reasonably and with proper motive, and may not do so arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of the parties. *Id.* at 991. In this case, defendants, through their agent Baker Lincoln, were the controlling parties with respect to the parking as they were the parties with a direct contractual obligation to the CTA and plaintiff's status was akin to that of a sub-lessee. Defendants controlled the continuance of the parking license with the CTA, particularly once plaintiff agreed to lift the declaration from its title; thus, plaintiff was dependent on defendants for its parking needs per the 2016 letter agreement, and the contract gave defendants some discretion over whether or not to perform the condition precedent to continue it. The circuit court focused its determination on whether it was commercially reasonable for defendants to cancel the parking license agreement. We find this to be in error.

¶ 45    As stated previously, a reading of the plain language in the letter agreement between plaintiff and Baker Lincoln yields the conclusion that Baker Lincoln was required to use commercially reasonable efforts to renew the CTA agreement at the end of each term. This distinction is the crux of the case: it matters not whether renewing of the parking license was a commercially reasonable undertaking for Baker Lincoln, instead, the agreement between the parties required it to use commercially reasonable efforts to renew the parking license. Any other reading of the parking agreement letter is contrary to its plain language and constitutes a

modification of the parties' agreement. Under Illinois law, no contract can be modified in *ex parte* fashion by one of the contracting parties without the knowledge and consent of the remaining party to the agreement. *Schwinder v. Austin Bank of Chicago*, 348 Ill. App. 3d 461, 469 (2004). As a result, we find that Baker Lincoln agreed to use commercially reasonable efforts to renew the CTA parking license at the end of each term under the terms of the 2016 letter agreement that it executed with plaintiff.

¶ 46     Having found that the letter agreement was not indeterminable and thus not terminable at will, and further finding that it could be terminated only on the occurrence of a specified event, whether defendants were entitled to terminate the letter agreement with plaintiff depends on whether defendants used commercially reasonable efforts to renew the CTA agreement. Plaintiff's complaint alleged that it paid its portion of the parking license fee every month in accordance with the 2016 letter agreement, and that the CTA was ready and willing to continue with the 2012 parking license agreement upon continued payment of the monthly fee. Plaintiff further alleged that defendants breached the 2016 letter agreement by failing to pay the monthly fee due under the 2012 CTA agreement. Accordingly, the question of whether defendants' efforts to renew the 2012 CTA agreement prior to terminating the parking license agreement with CTA were commercially reasonable requires a determination of whether their actions were done in good faith.

¶ 47     We conclude that the circuit court's finding that defendants' termination of the 2012 CTA agreement was commercially reasonable is contrary to the condition precedent required by the plain language of the 2016 letter agreement. As such, defendants were not entitled to dismiss plaintiff's complaint and the circuit court erred in granting defendants' section 2-619 motion on the basis that an affirmative matter existed to defeat plaintiff's claim. Additionally, we find that

defendants' section 2-615 claims that plaintiff's complaint failed to state a cause of action upon which relief could be granted were without merit at this stage of the litigation. Accordingly, we reverse the involuntary dismissal of plaintiff's complaint and remand for further proceedings consistent with this disposition.

¶ 48 In disagreeing with this conclusion, the dissent primarily focuses on the "fairness" of the letter agreement. However, the letter agreement only memorializes what was in the prior covenant on the land between the parties, which evidences the parties' intent that the parking agreement run long-term with the land until Baker Lincoln could no longer negotiate the lease using commercially reasonable efforts. As noted above, when a contract is clear and unambiguous, a court will not add terms in order to reach a result more equitable to one of the parties. *Wright v. Chicago Title Insurance Co.*, 196 Ill. App. 3d 920, 925 (1990).

¶ 49 We also disagree with the dissent's assessment that the letter agreement was not conditioned on Baker Lincoln's capacity to perform when the very words of the agreement indicate that it was premised on Baker Lincoln's ability to renew the lease using commercially reasonable efforts. The longstanding rule in Illinois is that the absence of a termination date does not necessarily void a contract. *Adkisson v. Ozment*, 55 Ill. App. 3d 108, 112 (1977). Further, as stated above, under *Cress*, a cognizable event under which termination can occur is not *ipso facto* perpetual and terminable at will. *Cress*, 341 Ill. App. 3d at 171.

¶ 50                    4. Count III- Rescission Based on Promissory Fraud

¶ 51 We decline to address arguments related to count III of plaintiff's complaint, rescission based on promissory fraud, as the record does not indicate that the circuit court addressed USEF's alternate argument that count III should be dismissed even if counts I and II were not.

¶ 52                                    CONCLUSION

¶ 53     For the foregoing reasons, the judgment of the circuit court of Cook County is reversed and the cause remanded for further proceedings.

¶ 54     Reversed and remanded.

¶ 55     PRESIDING JUSTICE PIERCE, dissenting:

¶ 56     The parties had an agreement to share costs for a parking lot. The CTA agreement created a month-to-month license to use the parking lot and was terminable on 30 days' notice. Under the parties' letter agreement, Baker Lincoln would make commercially reasonable efforts to renew the CTA agreement each month, and if Baker Lincoln was unable to renew the parking license, it would notify plaintiff and take certain other steps. Baker Lincoln stopped paying the CTA and subsequently terminated the CTA agreement, since it no longer needed the parking lot. Plaintiff sued for breach of contract and for other relief, alleging that Baker Lincoln breached its obligation to make commercially reasonable efforts to renew the CTA agreement. Baker Lincoln moved to dismiss plaintiff's breach of contract claim on grounds that the letter agreement was terminable at will because the letter agreement does not specify any termination event, and that Baker Lincoln's decision to stop paying for the parking lot amounted to a termination of the letter agreement rather than a breach. The circuit court agreed with Baker Lincoln and dismissed plaintiff's breach of contract claim. I would affirm the circuit court's judgment because the letter agreement is terminable at will because it does not contain any specified termination condition, but instead contains a perpetual obligation on Baker Lincoln to renew the CTA agreement, terminable only at the whim of the CTA, a nonparty to the letter agreement, in violation of public policy disfavoring perpetual contracts. I respectfully dissent.

¶ 57    The majority finds the letter agreement between plaintiff and Baker Lincoln contains a specified termination event and is therefore enforceable. The majority finds the specified termination event is "the inability of Baker Lincoln to renew the CTA parking agreement despite using commercially reasonable efforts." The majority thinks this obvious because the letter agreement provides that if Baker Lincoln is unable to renew the CTA agreement, it would notify plaintiff, so therefore, taken together, the letter agreement requires Baker Lincoln to use commercially reasonably efforts to renew the CTA agreement until those commercially reasonable efforts fail to result in a renewal. But the majority fails to consider that Baker Lincoln's performance obligation runs in perpetuity, and that the CTA might never refuse to renew the parking agreement.

¶ 58    Plaintiff argues the letter agreement contained a specified termination event, namely "that the CTA is not willing to renew the parking license agreement on commercially reasonable terms." Plaintiff's argument, however, is not based on anything contained in the letter agreement. The letter agreement does not require that the parking license contain commercially reasonable terms, but instead required Baker Lincoln to use commercially reasonable efforts to renew the agreement every month. The record reflects that none of the terms of the parking license, including the rent, changed after 2012. The "commercially reasonable efforts" to renew the parking license apparently consisted solely of paying the monthly fee charged under the parking license. In my view, the circuit court correctly observed that "[t]he Letter Agreement *** requires Baker Lincoln to continue paying 75% of rent under perpetual renewals of the CTA Lease with no time limitation whatsoever." The circuit court rejected plaintiff's assertion that the letter agreement contained a

specified termination condition, observing "Plaintiff's proposed condition is simply nowhere to be found in the Agreement." The circuit court's written order states:

> "Plaintiff repeatedly attempts to argue that only the CTA can terminate the contract, and that Baker Lincoln must continue to renew and pay until the CTA says otherwise, but this interpretation is directly contrary to the actual language of the Agreement, which does not specify *any* termination event, and only imposes an obligation to use 'commercially reasonable efforts.' Plaintiff tacitly admits that this language contemplates Baker Lincoln's interests also being a factor, conceding at oral argument that it would 'obviously' not be commercially reasonable for it to agree to pay a massively increased rent if the CTA demanded such. If Baker Lincoln can terminate the arrangement whenever no longer economically viable, that is not a 'specified event,' but rather the same sort of permissive termination provision the Illinois Supreme Court found in *Jespersen* which rendered the contract terminable at will. While the CTA could apparently terminate the lease for any reason at all, Baker Lincoln could plainly also do so if were no longer 'commercially reasonable,' a term left undefined in the Letter Agreement." (Emphasis in original.)

¶ 59 The majority brushes off the circuit court's sound reasoning and relies on a few sentences in *Jespersen* to conclude that the letter agreement here contains a specified termination event. I think the reasoning in *Jespersen* and the other cases cited but not discussed by the majority support Baker Lincoln and affirming the circuit court's judgment.

¶ 60 In *Jespersen*, the plaintiff alleged he entered into a sales distribution agreement (the agreement) with Trim-Line, Inc., whereby the plaintiff became an exclusive distributor of Trim-Line products. The agreement provided it "'shall continue in force indefinitely' unless terminated

in the manner provided in article IV." Article IV provided Trim-Line could terminate for five specified reasons: (1) if a distributor failed to reasonably promote the products; (2) if a distributor breached the agreement; (3) if the distributor failed to make payments; (4) the death, bankruptcy, or insolvency of the distributor; or (5) the unauthorized sale or transfer of the distributor's rights under the agreement. *Jespersen*, 183 Ill. 2d at 293-94. Furthermore, distributors such as the plaintiff could terminate the agreement on 30 days' written notice. *Id.* at 294. The defendant purchased Trim-Line, dissolved it, and terminated the plaintiff's sales distribution agreement. The plaintiff filed a breach of contract claim, which the circuit court dismissed because, in relevant part, the agreement was for an indefinite term. *Id.* at 293. This court affirmed the circuit court's dismissal.

¶ 61    Our supreme court likewise affirmed. The court explained:

> "Contracts of indefinite duration are terminable at the will of either party. [Citation.] An agreement without a fixed duration but which provides that it is terminable *only* for cause or upon the occurrence of a specific event is in one sense of indefinite duration, but is nonetheless terminable only upon the occurrence of the specified event and not at will. [Citations.]" (Emphasis in original.) *Id.* at 293.

The court further explained "the termination provision is permissive and equivocal; a party 'may' terminate for the stated grounds—the clear inference being that those grounds are not the sole or exclusive basis for termination." *Id.* at 294. Furthermore, "the termination events are themselves instances of material breach, and *any* contract is terminable upon the occurrence of a material breach." (Emphasis in original.) *Id.* "Where a contract is indefinite in duration, the delineation of instances of material breach in the context of a permissive and nonexclusive termination provision

will not create a contract terminable for cause." *Id.* at 295. The court explained the rationale for such a finding:

"Where parties have failed to agree on a contract's duration, the contract is construed as terminable at the will of either party because they have not agreed otherwise and it would be inappropriate for a court to step in and substitute its own judgment for the wisdom of the parties. This reflects two important public policies-one general, one specific. First, in general, individuals should be free to order their affairs subject to important qualifications for instances of fraud, duress, or undue influence. Second, perpetual contracts are disfavored. [Citation.] 'Forever' is a long time and few commercial concerns remain viable for even a decade. Advances in technology, changes in consumer taste and competition mean that once profitable businesses perish—regularly. Today's fashion will tomorrow or the next day inevitability fall the way of the buggy whip, the eight-track tape and the leisure suit. Men and women of commerce know this intuitively and achieve the flexibility needed to respond to market demands by entering into agreements terminable at will." *Id.* at 295.

¶ 62 Ordinarily, a contract will specify a duration, which denotes a clear expectation of how long the parties expect one another to perform. But, as *Jespersen* makes plain, if the agreement does not specify a duration, it should, at a minimum, clearly demonstrate the agreement is terminable upon a specified event. If the agreement does not specify a specific event that will terminate the agreement, the agreement is for an indefinite duration and terminable at will. Here, under the plain language of the letter agreement, there is no end to plaintiff's expectation that Baker Lincoln use commercially reasonable efforts to renew the CTA agreement. Nothing in the

agreement provides the agreement will terminate upon a specified event; the termination condition as formulated by plaintiff and the majority—the CTA's decision not to renew despite defendant's commercially reasonable efforts to induce renewal—is not contained in a written agreement between two sophisticated commercial parties. Where the parties did not agree on and document a condition for termination of their obligations, "it would be inappropriate for a court to step in and substitute its own judgment for the wisdom of the parties." *Jespersen*, 183 Ill. 2d at 295.

¶ 63    But even under plaintiff's and the majority's construction, the letter agreement was for an indefinite duration because there was no way to determine when or whether the CTA would ever refuse to renew the agreement. See *Rico Industries, Inc. v. TLC Group, Inc.*, 2014 IL App (1st) 131522, ¶ 27 (observing that a "contract terminable only on the written agreement of both parties is indefinite because you cannot foresee what will happen and it may never happen, and therefore is of an indefinite duration."). And it is noteworthy that nothing in the record suggests the terms of the CTA agreement, executed in 2012, ever changed or were renegotiated. Based on this record, the only "commercially reasonable effort" Baker Lincoln used to renew the month-to-month CTA agreement was payment of monthly rent, and plaintiff expected Baker Lincoln to do this forever. Why should Baker Lincoln be bound to pay 75% of the costs of a parking license—for which it has no use—in perpetuity with no ability to end its claimed obligation? Plaintiff and the majority believe that Baker Lincoln was obligated to both pay the license fee and use commercially reasonable efforts to keep the CTA agreement in place forever, with its only hope of terminating the agreement being the CTA rejecting a commercially reasonable effort to keep the license in place. This ruling is a windfall for plaintiff who, at best, continues to benefit with parking at one-

quarter the cost while defendants remain obligated for three-quarters of the cost with no benefit to themselves. Such an arrangement plainly does not comport with *Jespersen*.

¶ 64    The majority claims other caselaw supports finding the letter agreement contains a specified termination event, but the cases the majority cites—without any discussion—are distinguishable for two important reasons: first, those cases involve contracts that contain clearly ascertainable termination events, and second, those cases involve contracts with termination events that are within the control of the performing party, rather than at the discretion of third party. In *Cress v. Recreation Services, Inc.*, 341 Ill. App. 3d 149 (2003), the plaintiff sued the defendant for breach of an employment contract. The recitals to the employment contract stated, among other things, the defendant "wishes to retain the services of [plaintiff] until his retirement age of sixty-five" and to provide him with retirement benefits. *Id.* at 160. The agreement provided that the plaintiff's "compensation cannot be substantially reduced prior to his retirement provided he is capable of performing" his job. *Id.* at 161. The plaintiff alleged that he was fired at age 61, in breach of his guaranteed employment. The circuit court determined that the agreement contained an enforceable promise to employ the plaintiff until he was 65 years old. *Id.* at 158. This court rejected the defendant's argument that the contract was for an indefinite period and therefore unenforceable because the agreement "conditions the salary guarantee on plaintiff's capacity to perform his duties *** and, therefore, creates a binding employment agreement." *Id.* at 171. But here, unlike *Cress*, the letter agreement is not conditioned on Baker Lincoln's capacity to perform; instead, it presumes perpetual performance and simply requires "commercially reasonable efforts" to renew the CTA agreement with no end date.

¶ 65    The majority cites *Donahue v. Rockford Showcase & Fixture Co.*, 87 Ill. App. 2d 47 (1967), which is also distinguishable. There, the plaintiff sued the defendant for breach of an employment contract. The plaintiff alleged that, based on a series of letters, the defendant agreed to pay him a salary and a commission on sales (*id.* at 48-50), but he was terminated after a salary dispute (*id.* at 50). The circuit court entered a declaratory judgment that the contract was valid but was for an indefinite duration and thus terminable at will. *Id.* This court initially affirmed, but on rehearing, reversed the circuit court's judgment. This court found that while the letters provided that the agreement could be terminated by mutual consent, one of the letters contained a condition of termination, namely that the agreement would be automatically cancelled "if shipments to plaintiff's customers did not total $25,000 in any year." *Id.* at 54. Because the agreement contained a specified termination event, the agreement was not for an indefinite duration. *Id.*

¶ 66    *Cress* and *Donohue* both involved specific termination events, namely a condition that touched on the relationship of the parties and their willingness to be bound by their agreement, *i.e.*, an ability to perform the job in exchange for a guaranteed salary or meeting a specified shipping quota. *Cress* and *Donohue* are examples of where the parties agreed that the contract would terminate upon the occurrence of a specified condition. Here, the letter agreement contains no similar condition: Baker Lincoln was expected to perform until the CTA, a third party, rejected Baker Lincoln's commercially reasonable efforts to renew the agreement. It makes no sense that the parties implicitly and singularly bound the termination of the letter agreement to the whim of the CTA, a third party that has no interest in the letter agreement. The majority fails to identify a single case in which a contract with no defined termination date or event was found to be of a

definite duration where the termination event was at the discretion of a third party and where that discretion might never be exercised.

¶ 67    Here, while the parties had an agreement, they do not have an enforceable contract that plaintiff can sue upon because they failed to specify any duration of the agreement or a termination event, resulting in an agreement terminable at will. Baker Lincoln's nonperformance was a termination of the agreement, not a breach. The majority is unconcerned with Baker Lincoln's perpetual obligation to perform because the CTA might one day reject a commercially reasonable effort to new the parking license and concludes that plaintiff stated a breach of contract claim based on Baker Lincoln's failure to make any effort to renew the license. But that sort of discretionary future event—which might never come to pass—is too speculative to be a specified termination event. In my view, Baker Lincoln's refusal to renew the parking license was a termination of the letter agreement and not a breach. The majority twists Baker Lincoln's open-ended performance obligation into a clear termination event because the CTA—which was not a party to (and had no performance obligations under) the letter agreement—might one day reject a commercially reasonable effort to renew the parking license. Again, as caselaw makes clear, an agreement may obligate the parties to certain duties but, if the agreement contains no specific duration, it is terminable at will. Here, Baker Lincoln may have failed to perform an obligation under the letter agreement by refusing to pay the monthly parking license fee and terminating the license agreement, but in my view, it had the right to do so because the agreement was terminable at will. As such, plaintiff is without a remedy for any claimed damages after Baker Lincoln stopped paying its share of the monthly license fee to the CTA.

¶ 68    Because the letter agreement does not contain a specified termination event, I would find the agreement was terminable at will, Baker Lincoln could terminate the letter agreement at any time for any reason, and plaintiff cannot state a claim for breach of contract.

¶ 69    The majority also rejects the circuit court's additional basis for dismissal: that Baker Lincoln acted in a commercially reasonable manner when it decided not to renew the CTA agreement. In my view, the circuit court's discussion of this point in its order denying reconsideration only adds confusion to the issue raised in Baker Lincoln's motion to dismiss: whether the letter agreement was terminable at will. If the answer to that question was "yes," as the circuit court found—correctly, in my view—then any further analysis was unnecessary. If the answer to the question is "no," then the motion to dismiss would be denied and the litigation would continue. Baker Lincoln's motion to dismiss did not assert that it acted in a commercially reasonable manner when it stopped paying the CTA, and the circuit court had no reason to address that argument at the motion to dismiss stage. As the majority observes, the plain language of the letter agreement did not require Baker Lincoln to renew the CTA agreement if it was commercially unreasonable for Baker Lincoln to do so; the agreement required Baker Lincoln to use commercially reasonable efforts to renew the CTA agreement. Stated differently, the focus of the letter agreement was on the reasonableness of Baker Lincoln's conduct in renewing the CTA agreement, not whether it was reasonable for Baker Lincoln to renew the CTA agreement. The circuit court observed that if the CTA wanted a massive increase in the rent, then Baker Lincoln would act in a commercially reasonable manner by refusing to agree. No matter how reasonable the circuit court's view is, that hypothetical scenario was not established by the pleadings and would simply be a defense to the breach of contract claim: Baker Lincoln might be able show that

it made commercially reasonable efforts to renew the lease but the CTA's demanded unreasonable terms. At bottom, whether Baker Lincoln made a commercially reasonable decision is a question that would need to be litigated. To the extent the circuit court made any findings about the reasonableness of Baker Lincoln's business decision, those findings were extraneous to the question of whether the letter agreement was terminable at will.

¶ 70    I would find the letter agreement was terminable at will because it does not contain a specified termination event and I would affirm the circuit court's dismissal of plaintiff's breach of contract claim.